# Supreme Court of Florida

_____

No. SC18-1683

_____

**IN RE:  AMENDMENTS TO THE RULES REGULATING THE FLORIDA BAR—BIENNIAL PETITION.**

January 4, 2019
**<u>CORRECTED OPINION</u>**

PER CURIAM.

This matter is before the Court on the petition of The Florida Bar (Bar) proposing amendments to the Rules Regulating the Florida Bar (Bar Rules).  We have jurisdiction.  *See* art. V, § 15, Fla. Const.

The Bar's petition in this case proposes amendments to the following existing Bar Rules:  1-3.7 (Reinstatement to Membership); 2-3.11 (Quorum); 2-9.2 (Standing Board Policies); 2-9.4 (Ethics); 2-9.6 (Rules of Order); 2-9.7 (Insurance for Members of Board of Governors, Officers, Grievance Committee Members, UPL Committee Members, Clients' Security Fund Committee Members, and Employees); 3-7.2 (Procedures upon Criminal or Professional Misconduct; Discipline upon Determination or Judgment of Guilt of Criminal Misconduct; Discipline on Removal from Judicial Office); 3-7.10 (Reinstatement and

Readmission Procedures); 3-7.11 (General Rules of Procedure); 4-1.2 (Objectives and Scope of Representation); 4-1.5 (Fees and Costs for Legal Services); 4-1.10 (Imputation of Conflicts of Interest; General Rule); 4-1.19 (Collaborative Law Process in Family Law); 4-5.8 (Procedures for Lawyers Leaving Law Firms and Dissolution of Law Firms); 4-6.5 (Voluntary Pro Bono Plan); 4-8.3 (Reporting Professional Misconduct); 6-1.2 (Public Notice); 6-10.3 (Minimum Continuing Legal Education Standards); 14-6.1 (Binding Nature; Enforcement; and Effect of Failure to Pay Award); 14-7.1 (Immunity and Confidentiality); 18-1.2 (Definitions); 20-3.1 (Requirements for Registration); 20-5.2 (Duty to Update); 20-6.1 (Generally); 20-8.3 (Complaint Processing); and 20-8.6 (Disposition of Complaints). Additionally, the Bar proposes deleting Bar Rules 2-9.8 (Practice Resource Institute) and 3-7.15 (Amendments) in their entirety because they are duplicative of subdivisions of other Bar Rules. The proposals were approved by the Board of Governors and formal notice of the proposed amendments was published in *The Florida Bar News*, which invited comments from interested parties. No comments were received.

After having fully considered the Bar's petition, we adopt most of the amendments as proposed by the Bar and delete rules 2-9.8 and 3-7.15 in their entirety, as proposed by the Bar. However, as discussed below, we decline to

adopt portions of the amendments proposed to rule 3-7.2, and we adopt modified amendments to rule 20-3.1. We discuss the more significant amendments below.

First, we amend Bar Rule 1-3.7 to increase the required number of continuing legal education hours in subdivision (c) for retired or delinquent attorneys seeking reinstatement from ten to eleven hours for each year or partial year of retirement or delinquency. Subdivision (g)(2) is also amended to require inactive members who are seeking reinstatement to complete thirty-three hours of continuing legal education, rather than thirty hours. These changes are made following this Court's opinion in *In re Amendments to Rules Regulating the Florida Bar 4-1.1 & 6-10.3*, 200 So. 3d 1225 (Fla. 2016), in which the three-year continuing legal education requirement was increased from thirty hours to thirty-three hours.

Next, we amend Bar Rules 2-3.11, 2-9.2, and 2-9.6 to allow the Bar, and divisions thereof, to conduct electronic meetings. Specifically, Bar Rule 2-3.11 is renamed to "Electronic Meetings" and is rewritten to explicitly allow the Bar and divisions thereof to conduct electronic meetings. The title of Bar Rule 2-9.2 is amended to read "Adoption, Amendment, and Waiver of Standing Board Policies and Rules of Order," and the text of the rule is amended to provide that in addition to standing board policies, the Board of Governors may adopt "special rules of order governing parliamentary procedures." The text of Bar Rule 2-9.6 is amended

to provide that Robert's Rules of Order is the parliamentary authority that governs meetings of the Bar to the extent that it does not conflict with any standing board policies or special rules of order; if there is a conflict, the standing board policies or special rules of order will control.

We next amend Bar Rule 3-7.2 to make clear that it is an attorney's duty to report pending criminal charges and any judgment thereon to the Bar. Several subdivisions throughout the rule are rewritten for readability and to make clear the duties imposed by the rule, and upon whom those duties are imposed. However, we decline to adopt the Bar's proposed amendment to subdivision (f) that would make discretionary the Bar's now-mandatory duty to file a Notice of Determination or Judgment of Guilt with the Court upon discovery that an attorney has been adjudicated guilty of a felony. Although the Bar expresses concern over having no discretion in cases involving a finding of guilt of a felony that requires no intent because the rule provides for the automatic interim suspension of the attorney, we find that the seriousness of having been found guilty of a felony offense militates in favor of this Court retaining the ability to review the circumstances surrounding the finding of guilt. Accordingly, we decline to adopt the Bar's proposed amendment in this regard. We note, however, that any concern that a sanction resulting from having been found guilty of a felony offense that requires no intent will be too severe is addressed by the procedures already present

in the rule; subdivision (h) provides that the matter will be referred to a referee who can make a recommendation to the Court as to the appropriate sanction for the attorney's conduct, which the Court considers in imposing the final discipline.

We next amend subdivision (f)(4)(B) of Bar Rule 3-7.10 to make clear that attorneys seeking reinstatement that are required under that subdivision to complete the Florida bar examination or a portion thereof must have proof of having passed the required portions of the examination prior to filing a petition for reinstatement under that rule.

Additionally, we amend subdivision (h) within Bar Rule 4-1.5 to replace the provision that "[n]o higher fee shall be charged and no additional charge shall be imposed by reason of a lawyer's or law firm's participation in a credit plan" with a statement that "[l]awyers may charge clients the actual charge the credit plan imposes on the lawyer for the client's transaction." By so doing, we hereby allow lawyers to pass on the actual costs resulting directly from a client's choice to pay a bill or invoice with a credit card, or make payments under a credit plan, to that client.

We next amend Bar Rule 6-10.3 to require that one of the five credit hours of continuing legal education per three-year reporting cycle that is required to concern legal ethics, professionalism, bias elimination, substance abuse, or mental illness awareness must concern professionalism. Additionally, we amend the

definition of "supervising lawyer" contained in Bar Rule 18-1.2(c) to make clear that a supervising lawyer under that rule must be "eligible to practice law in Florida."

Next, we amend various rules governing the Florida Registered Paralegal Program. First, we amend Bar Rule 20-3.1 to create an additional category of individuals who may become Florida Registered Paralegals; however, we modify the language proposed by the Bar to create the category for those with "a juris doctorate degree from an American Bar Association accredited institution and membership in good standing with a state bar association other than Florida's, with no minimum paralegal work experience." We also amend Bar Rule 20-5.2 to provide that the Bar will notify a registered paralegal's supervising or employing attorney of any changes to the paralegal's registration status. Further, we amend Bar Rule 20-6.1 to increase the continuing education requirement for registered paralegals from thirty hours every reporting cycle to thirty-three hours, and requiring three of those hours to concern technology. Additionally, we increase the number of continuing education hours required for re-registering after resigning or having one's registration revoked from ten hours to eleven. These increases are consistent with recent increases that we have made with regard to required continuing legal education requirements for lawyers. Last, we amend subdivision (e) of Bar Rule 20-8.3 to require a registered paralegal to notify the

supervising attorney if a complaint has been filed against the paralegal pursuant to that rule.

Finally, we delete two rules in their entirety because they are duplicative of provisions found elsewhere in the rules. Bar Rule 2-9.8 is deleted as duplicative of Bar Rule 2-3.2(d)(7). Additionally, Bar Rule 3-7.15 is deleted as duplicative of Bar Rule 1-12.1(f).

Accordingly, the Court adopts the amendments to the Rules Regulating the Florida Bar as set forth in the appendix to this opinion. Deletions are indicated by struck-through type, and new language is indicated by underscoring. The comments are offered for explanation and guidance only and are not adopted as an official part of the rules. The amendments shall become effective on March 5, 2019.

It is so ordered.

CANADY, C.J., and PARIENTE, LEWIS, QUINCE, POLSTON, LABARGA, and LAWSON, JJ., concur.

NO MOTION FOR REHEARING WILL BE ALLOWED.

Original Proceeding – Rules Regulating The Florida Bar

Joshua E. Doyle, Executive Director, Michelle R. Suskauer, President, John Stewart, President-Elect, Lori S. Holcomb, Director, Division of Ethics and Consumer Protection, and Elizabeth Clark Tarbert, Ethics Counsel, The Florida Bar, Tallahassee, Florida,

    for Petitioner

# APPENDIX
## CHAPTER 1 GENERAL
### 1-3 MEMBERSHIP
### RULE 1-3.7  REINSTATEMENT TO MEMBERSHIP

**(a)  Eligibility for Reinstatement.**  Members who have retired or been delinquent for a period of time not in excess of 5 years are eligible for reinstatement under this rule.  Time will be calculated from the day of the retirement or delinquency.

Inactive members may also seek reinstatement under this rule.

**(b)  Petitions Required.**  A member seeking reinstatement must file a petition with the executive director setting forth the reason for inactive status, retirement, or delinquency and showing good cause why the petition for reinstatement should be granted.  The petitioner must include all required information on a form approved by the board of governors.  The petition must be accompanied by a nonrefundable reinstatement fee of $150 and payment of all arrearages unless adjusted by the executive director with concurrence of the executive committee for good cause shown.  Inactive members are not be required to pay the reinstatement fee.  No member will be reinstated if, from the petition or from investigation conducted, the petitioner is not of good moral character and morally fit to practice law or if the member is delinquent with the continuing legal education or basic skills course requirements.

If the executive director is in doubt as to approval of a petition, the executive director may refer the petition to the board of governors for its action. Action of the executive director or board of governors denying a petition for reinstatement may be reviewed on petition to the Supreme Court of Florida.

**(c)  Members Who Have Retired or Been Delinquent for Less Than 5 Years, But More Than 3 Years.**  Members who have retired or been delinquent for less than 5 years, but more than 3 years, must complete ~~10~~11 hours of continuing legal education courses for each year or portion of a year that the member had retired or was deemed delinquent.

**(d)  Members Who Have Retired or Been Delinquent for 5 Years or More.**  Members who have retired or have been deemed delinquent for a period of 5 years or longer will not be reinstated under this rule and must be readmitted upon application to the Florida Board of Bar Examiners and approval by the Supreme Court of Florida.

**(e) Members Who Have Permanently Retired.** Members who have permanently retired will not be reinstated under this rule.

**(f) Members Delinquent 60 Days or Less.** Reinstatement from delinquency for payment of membership fees or completion of continuing legal education or basic skills course requirements approved within 60 days from the date of delinquency is effective on the last business day before the delinquency. Any member reinstated within the 60-day period is not subject to disciplinary sanction for practicing law in Florida during that time.

**(g) Inactive Members.** Inactive members may be reinstated to active membership in good standing to become eligible to practice law in Florida by petition filed with the executive director, in the form and as provided in (b) above, except:

(1) If the member has been inactive for greater than 5 years, has been authorized to practice law in another jurisdiction, and either actively practiced law in that jurisdiction or held a position that requires a license as a lawyer for the entire period of time, the member will be required to complete the Florida Law Update continuing legal education course as part of continuing legal education requirements.

(2) If the member has been inactive for greater than 5 years and does not meet the requirements of subdivision (1), the member will be required to complete the basic skills course requirement and the ~~30-hour~~33-hour continuing legal education requirement.

(3) An inactive member is not eligible for reinstatement until all applicable continuing legal education requirements have been completed and the remaining portion of membership fees for members in good standing for the current fiscal year have been paid.

## CHAPTER 2 BYLAWS OF THE FLORIDA BAR
### 2-3 BOARD OF GOVERNORS
### BYLAW 2-3.11  ~~QUORUM~~ELECTRONIC MEETINGS

~~A majority of the members of the board of governors shall constitute a quorum for the transaction of business at all meetings.~~Electronic meetings are authorized for all meetings of The Florida Bar; its board of governors; the executive committee and committees of its board of governors; and its sections, divisions, and committees. Special rules of order pertaining to the conduct of electronic meetings may be adopted by the board of governors.

# 2-9 POLICIES AND RULES
## BYLAW 2-9.2  ADOPTION, AMENDMENT, AND WAIVER OF STANDING BOARD POLICIES AND RULES OF ORDER

The board of governors shallmay adopt standing board policies governing the internal administration and operation and special rules of order governing parliamentary procedures of The Florida Bar and the board of governors.  The board of governors may adopt, amend, or rescind standing board policies and special rules of order by a majority vote of the membership of the board of governors provided any amendment to any standing board policy or special rules of order shallis not be effective until 30 days after adoption or another date specifically approved by the board of governors.  Such standingStanding board policies and special rules of order may be adopted, rescinded, or amended by a majority vote of those present at any regular meeting of the board of governors provided advance written notice is given to the members of the board of governors of the proposed adoption, repeal, or amendment of any standing board policy or special rules of order.  The provision of any standing board policy or special rule of order may be waived by a two-thirds vote of those present at any regular meeting of the board of governors.

## BYLAW 2-9.4  ETHICS

**(a)  Rules of Procedure.**  The board of governors shall adopts rules of procedure governing the manner in which opinions on professional ethics may be solicited by members of The Florida Bar, issued by the staff of The Florida Bar or by the professional ethics committee, circulated or published by the staff of The Florida Bar or by the professional ethics committee, and appealed to the board of governors of The Florida Bar.

**(b)  Amendment.**  The adoption of, repeal of, or amendment to the rules authorized by subdivision (a) shall beis effective only under the following circumstances:

(1)  The proposed rule, repealer, or amendment shall beis approved by a majority vote of the board of governors at any regular meeting of the board of governors.

(2)  The proposal thereafter shall beis published in The Florida Bar NewsNews at least 20 days preceding the next regular meeting of the board of governors.

(3)  The proposal ~~shall thereafter~~ receive<u>s</u> a majority vote of the board of governors at its meeting following publication ~~as herein required~~.

**(c)  Waiver.**  The rules of procedure adopted as required in subdivision (a) may be temporarily waived as to any particular matter only ~~up~~on unanimous vote of those present at any regular meeting of the board of governors.

**(d)  Confidentiality.**  Each advisory opinion issued by Florida Bar ethics counsel ~~shall~~<u>will</u> be identified as a "staff opinion" and ~~shall~~ be available for inspection or production.  The names and any identifying information of any individuals mentioned in a staff opinion ~~shall~~<u>will</u> be deleted before the staff opinion is released to anyone other than the member of The Florida Bar making the original request for the advisory opinion.

**(e)  Disqualification as ~~Attorney~~<u>Lawyer</u> Due to Conflict.**

*(1)  Members of the Professional Ethics Committee (PEC), Members of the Board of Governors, and Employees of The Florida Bar.*  ~~No member of the PEC, the board of governors, or employee of The Florida Bar shall represent a party other than The Florida Bar in proceedings for the issuance of opinions on professional ethics authorized under these Rules Regulating The Florida Bar.~~

*(2)  Former Members of the PEC, Former Board Members, and Former Employees.*  ~~No former member of the PEC, former member of the board of governors, or former employee of The Florida Bar shall represent any party other than The Florida Bar in proceedings for the issuance of opinions on professional ethics authorized under these rules if personally involved to any degree in the matter while a member of the PEC, a member of the board of governors, or an employee of The Florida Bar.~~

~~A former member of the PEC, former member of the board of governors, or former employee of The Florida Bar who did not participate personally in any way in the matter or any related matter in which the attorney seeks to be a representative, and who did not serve in a supervisory capacity over such matter, shall not represent any party except The Florida Bar in proceedings for the issuance of opinions on professional ethics authorized under these rules for 1 year after such service without the express consent of the board.~~

*(3)  Partners, Associates, Employers, or Employees of the Firms of PEC Members or Board of Governors Members Precluded From Representing Parties Other Than The Florida Bar.*  ~~Members of the firms of board of governors members or PEC members shall not represent any party other than~~

The Florida Bar in proceedings for the issuance of opinions on professional
ethics authorized under these rules without the express consent of the board.

*(4)  Partners, Associates, Employers, or Employees of the Firms of Former
PEC Members or Former Board of Governors Members Precluded From
Representing Parties Other Than The Florida Bar.*  Attorneys in the firms of
former board of governors members or former PEC members shall not
represent any party other than The Florida Bar in proceedings for the issuance
of opinions on professional ethics authorized under these rules for 1 year after
the former member's service without the express consent of the board.

(1)  *Representation Prohibited.*  Lawyers may not represent any person or
entity other than The Florida Bar in proceedings for the issuance of opinions on
professional ethics authorized by these rules if they are:

     (A)  currently serving on the professional ethics committee or the board
of governors;

     (B)  employees of The Florida Bar; or

     (C)  former members of the professional ethics committee, former
members of the board of governors, or former employees of The Florida
Bar if personally involved to any degree in the matter while a member of
the professional ethics committee or the board of governors, or while an
employee of The Florida Bar.

(2)  *Representation Permitted With Consent by the Board of Governors.*
Lawyers may represent a person or entity other than The Florida Bar in
proceedings for the issuance of opinions on professional ethics authorized by
these rules only after receiving consent from the executive director or board of
governors if they are:

     (A)  former members of the professional ethics committee, former
members of the board of governors, or former employees of The Florida
Bar who did not participate personally in any way in the matter or in any
related matter in which the lawyer seeks to be a representative and who did
not serve in a supervisory capacity over the matter within 1 year of the
service or employment;

     (B)  a partner, associate, employer, or employee of a member of the
professional ethics committee or a member of the board of governors; or

(C)  a partner, associate, employer, or employee of a former member of the professional ethics committee or a former member of the board of governors within 1 year of the former member's service on the professional ethics committee or board of governors.

(3)  *Participation in Issuance of Ethics Proceedings for Oneself.*  The disqualification under this rule does not prohibit lawyers described above from participating on their own behalf in proceedings for the issuance of opinions on professional ethics authorized by these rules and the Florida Bar Procedures for Ruling on Questions of Ethics.

## BYLAW 2-9.6  RULES OF ORDER

The current edition of Robert's Rules of Order shall be the rules thatis the parliamentary authority that governs the conduct of all meetings of The Florida Bar, its board of governors, its sections, divisions, and committees, except for Robert's Rules of Order that are inconsistent with these bylaws and the bar's Special Rules of Order as set forth in the Standing Board Policies or in section or division bylaws.

## BYLAW 2-9.7  INSURANCE FOR MEMBERS OF BOARD OF GOVERNORS, OFFICERS, GRIEVANCE COMMITTEE MEMBERS, UPL COMMITTEE MEMBERS, CLIENTS' SECURITY FUND COMMITTEE MEMBERS, AND EMPLOYEES

AppropriateThe bar will provide insurance coverage for members of the board of governors, officers of The Florida Bar, members of UPL, clients' security fund, and grievance committees, and employees of The Florida Bar shall be provided as authorized by the budget committee and included in the budget.  The bar will indemnify officers, board of governors, UPL, clients' security fund, and grievance committee members and bar employees as provided in the standing board policies. To the extent the person is not covered by insurance, The Florida Bar shall indemnify any officer, board member, UPL, clients' security fund, or grievance committee member, or employee of The Florida Bar who was or is a party, or is threatened to be made a party to any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative, or investigative (other than an action by The Florida Bar), by reason of the fact that the person is or was an officer, board member, UPL, clients' security fund, or grievance committee member, or employee of The Florida Bar, against expenses (including attorneys' fees), judgments, fines, and amounts paid in settlement, actually and reasonably incurred by the person in connection with such action, suit, or proceeding,

- 13 -

including any appeal thereof, if the person acted in good faith and in a manner reasonably believed to be in, or not opposed to, the best interests of The Florida Bar, and with respect to any criminal action or proceeding, had no reasonable cause to believe the conduct was unlawful. The termination of any action, suit, or proceeding by judgment, order, settlement, or conviction or upon a plea of nolo contendere or its equivalent shall not of itself create a presumption that the person did not act in good faith and in a manner that the person reasonably believed to be in, or not opposed to, the best interests of The Florida Bar, or with respect to any criminal action or proceeding, had reasonable cause to believe that the conduct was unlawful.

## BYLAW 2-9.8 ~~PRACTICE RESOURCE INSTITUTE~~<u>RESERVED FOR FUTURE USE</u>

~~The board of governors creates the Practice Resource Institute and will adopt standing board policies, as provided in bylaw 2-9.2, that govern the operation of the institute.~~

## CHAPTER 3 RULES OF DISCIPLINE
## 3-7 PROCEDURES
## RULE 3-7.2 PROCEDURES ~~U~~PON CRIMINAL OR PROFESSIONAL MISCONDUCT; DISCIPLINE ~~U~~PON DETERMINATION OR JUDGMENT OF GUILT OF CRIMINAL MISCONDUCT; DISCIPLINE ON REMOVAL FROM JUDICIAL OFFICE

**(a) Definitions.**

(1) *Judgment of Guilt.* For the purposes of these rules, "judgment of guilt" includes only those cases in which the trial court in the criminal proceeding enters an order adjudicating the respondent guilty of the offense(s) charged.

(2) *Determination of Guilt.* For the purposes of these rules, "determination of guilt" includes those cases in which the trial court in the criminal proceeding enters an order withholding adjudication of the respondent's guilt of the offense(s) charged, those cases in which the convicted lawyer has entered a plea of guilty to criminal charges, those cases in which the convicted lawyer has entered a no contest plea to criminal charges, those cases in which the jury has rendered a verdict of guilty of criminal charges, and those cases in which the trial judge in a bench trial has rendered a verdict of guilty of criminal charges.

(3) *Convicted Lawyer.* For the purposes of these rules, "convicted lawyer" means a lawyer who has had either a determination or judgment of guilt entered by the trial court in the criminal proceeding.

**(b) Determination or Judgment of Guilt, Admissibility; Proof of Guilt.** Determination or judgment of guilt of a member of The Florida Bar by a court of competent jurisdiction ~~up~~on trial of or plea to any crime under the laws of this state, or under the laws under which any other court making ~~such~~the determination or entering ~~such~~the judgment exercises its jurisdiction, is admissible in proceedings under these rules and is conclusive proof of guilt of the criminal offense(s) charged for the purposes of these rules.

**(c) Notice of Institution of Felony Criminal Charges.** ~~Upon the institution of a felony criminal charge against a member of The Florida Bar by the filing of an indictment or information the~~Any member of The Florida Bar who is the subject of a felony criminal charge must ~~within 10 days of the institution of the felony criminal charges~~ notify the executive director of The Florida Bar of ~~such~~the charges within 10 days of the filing of the indictment or information and include a copy of the indictment or information. ~~Notice includes a copy of the document(s) evidencing institution of the charges.~~

If the state attorney whose office is assigned to a felony criminal case is aware that the defendant is a member of The Florida Bar, the state attorney must provide a copy of the indictment or information to the executive director.

**(d) Notice of Determination or Judgment of Guilt of Felony Charges.**

(1) *Trial Judge.* ~~If any such determination or judgment is entered in a court of the State of Florida, the~~The trial judge must~~, within 10 days of the date on which the determination or judgment is entered, give notice~~ provide a certified copy of the determination or judgment of guilt of a felony offense to the executive director of The Florida Bar ~~and include a certified copy of the document(s) on which the determination or judgment was entered~~within 10 days of its entry.

(2) *Clerk of Court.* ~~If any such determination or judgment is entered in a court of the State of Florida, the~~The clerk of that court must~~, within 10 days of the date on which the determination or judgment is entered, give notice~~ provide a certified copy of the determination or judgment of guilt of a felony offense to the executive director ~~and include a certified copy of the document(s) on which the determination or judgment was entered~~within 10 days of its entry.

- 15 -

(3) *State Attorney.* ~~If the state attorney whose office is assigned to a felony criminal case is aware that the defendant is a member of The Florida Bar, the~~The state attorney whose office is assigned that case must ~~give notice of~~provide a copy of the documents evidencing the determination or judgment of guilt of a felony offense to the executive director ~~the determination or judgment of guilt to the executive director and include a copy of the document(s) evidencing such determination or judgment~~if the state attorney is aware that the defendant is a member of The Florida Bar.

**(e) Notice of Self-Reporting by Members of Determination or Judgment of Guilt of All Criminal Charges.**

A member of The Florida Bar must ~~within 10 days of entry of a determination or judgment for any criminal offense, which was entered on or after August 1, 2006, notify the executive director of The Florida Bar of such determination or judgment. Notice must include~~provide a copy of the document(s) ~~on which such determination or judgment was entered~~entering a determination or judgment for any criminal offense against that member entered on or after August 1, 2006 to the executive director within 10 days of its entry.

**(f) Suspension by Judgment of Guilt (Felonies)**. ~~Upon receiving notice that a member of the bar has been determined to be or adjudicated guilty of a felony, the bar~~The Florida Bar will file a "Notice of Determination or Judgment of Guilt" or a consent judgment for disbarment or disciplinary revocation in the Supreme Court of Florida on receiving notice that a member of the bar has been determined to be or adjudicated guilty of a felony. A copy of the document(s) on which the determination or judgment is based must be attached to the notice. ~~Upon the filing of the notice with the Supreme Court of Florida and service of such notice upon the respondent, the~~The respondent is suspended as a member of The Florida Bar as defined in rule 3-5.1(e) on filing of the notice with the Supreme Court of Florida and service of the notice on the respondent.

**(g) Petition to Modify or Terminate Suspension.** ~~At any time after the filing of a notice of determination or judgment of guilt, the~~The respondent may file a petition with the Supreme Court of Florida to modify or terminate ~~such~~ suspension at any time after the filing of a notice of determination or judgment of guilt.~~and~~ The respondent must serve a copy of the petition on the executive director. The ~~filing of such petition will not operate as a stay of the~~ suspension imposed under the authority of this rule will not be stayed by filing a petition to modify or terminate suspension.

**(h)  Appointment of Referee.**  ~~Upon the entry of an order of suspension, as provided above, the supreme court must~~The Supreme Court of Florida will promptly appoint or direct the appointment of a referee on the entry of an order of suspension as provided above.

(1)  *Hearing on Petition to Terminate or Modify Suspension.*  The referee must hear a petition to terminate or modify a suspension imposed under this rule within 7 days of appointment and submit a report and recommendation to the Supreme Court of Florida within 7 days of the date of the hearing.  The referee will recommend termination or modification of the suspension only if the suspended member can demonstrate that the member is not the convicted person or that the criminal offense is not a felony.

(2)  *Hearing on Sanctions.*  ~~In addition to conducting a hearing on a petition to terminate or modify a suspension entered under this rule, the~~The referee may also hear argument concerning the appropriate sanction to be imposed and file a report and recommendation with the supreme court in the same manner and form as provided in rule 3-7.6(m) of these rules.  The hearing must be held and a report and recommendation filed with the supreme court within 90 days of assignment as referee.

The respondent may challenge the imposition of a sanction only on the grounds of mistaken identity or whether the conduct involved constitutes a felony under applicable law.  The respondent may present relevant character evidence and relevant matters of mitigation regarding the proper sanction to be imposed.  The respondent cannot contest the findings of guilt in the criminal proceedings.  A respondent who entered a plea in the criminal proceedings is allowed to explain the circumstances concerning the entry of the plea for purposes of mitigation.

The report and recommendations of the referee may be reviewed in the same manner as provided in rule 3-7.7 of these rules.

**(i)  Appeal of Conviction.**  ~~If an appeal is taken by the respondent from the determination or judgment in the criminal proceeding, the~~The suspension will remain in effect during ~~the~~any appeal of the determination or judgment of guilt of a felony offense in the criminal proceeding.  ~~If on review the cause is remanded for further proceedings, the~~The suspension will remain in effect until the final disposition of the criminal cause if remanded for further proceedings and until the respondent's civil rights have been restored and the respondent has been reinstated

- 17 -

unless modified or terminated by the Supreme Court of Florida as elsewhere provided.

~~Further, the suspension imposed will remain in effect until civil rights have been restored and until the respondent is reinstated.~~

**(j) Expunction.** ~~Upon motion of the respondent, the~~The Supreme Court of Florida may expunge a sanction entered under this rule when a final disposition of the criminal cause has resulted in acquittal or dismissal <u>on motion of the respondent</u>.  A respondent who is the subject of a sanction that is expunged under this rule may lawfully deny or fail to acknowledge the sanction, except when the respondent is a candidate for election or appointment to judicial office, or as otherwise required by law.

**(k) Waiver of Time Limits.**  The respondent may waive the time requirements set forth in this rule by written request made to and approved by the referee or supreme court.

**(*l*) Professional Misconduct in Foreign Jurisdiction.**

(1) *Notice of Discipline by a Foreign Jurisdiction.*  A member of The Florida Bar ~~who has submitted a disciplinary resignation or otherwise surrendered a license to practice law in lieu of disciplinary sanction, or has been disbarred or suspended from the practice of law by a court or other authorized disciplinary agency of another state or by a federal court must within 30 days after the effective date of the disciplinary resignation, disbarment or suspension~~must file <u>a copy of any order or judgment by a court or other authorized disciplinary agency of another state or by a federal court effecting a disciplinary resignation, disciplinary revocation, disbarment, or suspension or any other surrender of the member's license to practice law in lieu of discipline </u>with the Supreme Court of Florida and the executive director of The Florida Bar ~~a copy of the order or judgment effecting such disciplinary resignation, disbarment or suspension~~<u>within 30 days of its effective date</u>.

(2) *Effect of Adjudication or Discipline by a Foreign Jurisdiction.*  ~~On petition of The Florida Bar supported by a copy of a final adjudication by a foreign court or disciplinary authority, the~~The Supreme Court of Florida may issue an order suspending ~~on an emergency basis ~~the member who is the subject of the final adjudication <u>on an emergency basis on petition of The Florida Bar attaching a copy of the final adjudication by a foreign court or disciplinary authority</u>.  All of the conditions not in conflict with this rule

applicable to issuance of emergency suspension orders elsewhere within these Rules Regulating The Florida Bar are applicable to orders entered under this rule.

**(m)  Discipline ~~Upon~~on Removal ~~From~~from Judicial Office.**

(1)  *Notice of Removal.*  ~~If an order of the Supreme Court of Florida removes a member of The Florida Bar from judicial office for judicial misconduct, the~~The clerk of the ~~supreme court~~Supreme Court of Florida will forward a copy of ~~the~~any order ~~of removal~~removing a member of The Florida Bar from judicial office for judicial misconduct to the executive director of The Florida Bar.

(2)  *Filing of Formal Complaint.*  ~~Upon receipt of an order removing a member from judicial office for judicial misconduct, the bar~~The Florida Bar may file a formal complaint with the ~~court~~Supreme Court of Florida and seek appropriate discipline on receipt of an order removing a member from judicial office for judicial misconduct.

(3)  *Admissibility of Order; Conclusive Proof of Facts.*  The order of removal is admissible in proceedings under these rules and is conclusive proof of the facts on which the judicial misconduct was found by the ~~court~~Supreme Court of Florida.

(4)  *Determination of Lawyer Misconduct.*  The issue of whether the facts establishing the judicial misconduct also support a finding of lawyer misconduct are determined by the referee based on the record of the proceedings.

## RULE 3-7.10  REINSTATEMENT AND READMISSION PROCEDURES

**(a)  Reinstatement; Applicability.**  A lawyer who is ineligible to practice due to a court-ordered disciplinary suspension of 91 days or more or who has been placed on the inactive list for incapacity not related to misconduct may be reinstated to membership in good standing in The Florida Bar and be eligible to practice again pursuant to this rule.  The proceedings under this rule are not applicable to any lawyer who is not eligible to practice law due to a delinquency as defined in rule 1-3.6 of these rules.

**(b) Petitions; Form and Contents.**

(1) *Filing.* The original petition for reinstatement must be verified by the petitioner and filed with the Supreme Court of Florida in compliance with the Florida Rules of Civil Procedure and the Florida Rules of Judicial Administration. A copy must be served on ~~Staff Counsel~~staff counsel, The Florida Bar, in compliance with applicable court rules. The petition for reinstatement may not be filed until the petitioner has completed at least 80% of the term of that lawyer's period of suspension.

(2) *Form and Exhibits.* The petition must be in the form and accompanied by the exhibits provided for elsewhere in this rule. The information required concerning the petitioner may include any or all of the following matters in addition to any other matters that may be reasonably required to determine the fitness of the petitioner to resume the practice of law: criminal and civil judgments; disciplinary judgments; copies of income tax returns together with consents to secure original returns; occupation during suspension and employment related information; financial statements; and statement of restitution of funds that were the subject matter of disciplinary proceedings. In cases seeking reinstatement from incapacity, the petition must also include copies of all pleadings in the matter leading to placement on the inactive list and all other matters reasonably required to demonstrate the character and fitness of the petitioner to resume the practice of law.

**(c) Deposit for Cost.** The petition must be accompanied by proof of a deposit paid to The Florida Bar in the amount the board of governors prescribes to ensure payment of reasonable costs of the proceedings, as provided elsewhere in this rule.

**(d) Reference of Petition for Hearing.** The chief justice will refer the petition for reinstatement to a referee for hearing; provided, however, that no such referral will be made until evidence is submitted showing that all costs assessed against the petitioner in all disciplinary or incapacity proceedings have been paid and restitution has been made.

**(e) Bar Counsel.** When a petition for reinstatement is filed, the board of governors or staff counsel, if authorized by the board of governors, may appoint bar counsel to represent The Florida Bar in the proceeding. The lawyer's duty is to appear at the hearings and to prepare and present to the referee evidence that, in the opinion of the referee or lawyer, will be considered in passing ~~up~~on the petition.

**(f) Determination of Fitness by Referee Hearing.** The referee to whom the petition for reinstatement is referred must conduct the hearing as a trial, in the same manner, to the extent practical, as provided elsewhere in these rules. The referee must decide the fitness of the petitioner to resume the practice of law. In making this determination, the referee will consider whether the petitioner has engaged in any disqualifying conduct, the character and fitness of the petitioner, and whether the petitioner has been rehabilitated, as further described in this subdivision. All conduct engaged in after the date of admission to The Florida Bar is relevant in proceedings under this rule.

(1) *Disqualifying Conduct.* A record manifesting a deficiency in the honesty, trustworthiness, diligence, or reliability of a petitioner may constitute a basis for denial of reinstatement. The following are considered disqualifying conduct:

(A) unlawful conduct;

(B) academic misconduct;

(C) making or procuring any false or misleading statement or omission of relevant information, including any false or misleading statement or omission on any application requiring a showing of good moral character;

(D) misconduct in employment;

(E) acts involving dishonesty, fraud, deceit, or misrepresentation;

(F) abuse of legal process;

(G) financial irresponsibility;

(H) neglect of professional obligations;

(I) violation of an order of a court;

(J) evidence of mental or emotional instability;

(K) evidence of drug or alcohol dependency;

(L) denial of admission to the bar in another jurisdiction on character and fitness grounds;

(M)  disciplinary action by a lawyer disciplinary agency or other professional disciplinary agency of any jurisdiction;

(N)  failure of a felony-suspended lawyer to submit proof that the affected lawyer's civil rights have been restored; and

(*O*)  any other conduct that adversely reflects on the character or fitness of the applicant.

(2)  *Determination of Character and Fitness.*  In addition to other factors in making this determination, the following factors will be considered in assigning weight and significance to prior conduct:

(A)  age at the time of the conduct;

(B)  recency of the conduct;

(C)  reliability of the information concerning the conduct;

(D)  seriousness of the conduct;

(E)  factors underlying the conduct;

(F)  cumulative effect of the conduct or information;

(G)  evidence of rehabilitation;

(H)  positive social contributions since the conduct;

(I)  candor in the discipline and reinstatement processes; and

(J)  materiality of any omissions or misrepresentations.

(3)  *Elements of Rehabilitation.*  Merely showing that an individual is now living as and doing those things that should be done throughout life, although necessary to prove rehabilitation, does not prove that the individual has undertaken a useful and constructive place in society.  Any petitioner for reinstatement from discipline for prior misconduct is required to produce clear and convincing evidence of rehabilitation including, but not limited to, the following elements:

(A)  strict compliance with the specific conditions of any disciplinary, judicial, administrative, or other order, where applicable;

(B)  unimpeachable character and moral standing in the community;

(C)  good reputation for professional ability, where applicable;

(D)  lack of malice and ill feeling toward those who by duty were compelled to bring about the disciplinary, judicial, administrative, or other proceeding;

(E)  personal assurances, supported by corroborating evidence, of a desire and intention to conduct one's self in an exemplary fashion in the future;

(F)  restitution of funds or property, where applicable; and

(G)  positive action showing rehabilitation by such things as a person's community or civic service. Community or civic service is donated service or activity that is performed by someone or a group of people for the benefit of the public or its institutions.

The requirement of positive action is appropriate for persons seeking reinstatement to the bar as well as for applicants for admission to the bar because service to one's community is an essential obligation of members of the bar.

(4)  *Educational Requirements.*

(A)  In the case of a petitioner's ineligibility to practice for a period of 3 years or longer under this rule, the petitioner must demonstrate to the referee that the petitioner is current with changes and developments in the law:

(i)  The petitioner must have completed at least 10 hours of continuing legal education courses for each year or portion of a year that the petitioner was ineligible to practice.

(ii)  The petitioner may further demonstrate that the petitioner is current with changes and developments in the law by showing that the petitioner worked as a law clerk or paralegal or taught classes on legal issues during the period of ineligibility to practice.

(B)  A petitioner who has been ineligible to practice for 5 years or more will not be reinstated under this rule until the petitioner has re-taken and provided proof in the lawyer's petition for reinstatement that the lawyer has

passed both the Florida portions of the Florida Bar Examination and the Multistate Professional Responsibility Examination (MPRE). A petitioner must have proof of passing all these required portions of the bar examination before that petitioner may file a petition for reinstatement under this subdivision.

**(g)  Hearing; Notice; Evidence.**

(1) *Notice.*  The referee to whom the petition for reinstatement is referred will fix a time and place for hearing, and notice of the hearing will be provided at least 10 days prior to the hearing to the petitioner, to lawyers representing The Florida Bar, and to other persons who may be designated by the appointed referee.

(2) *Appearance.*  Any persons to whom notice is given, any other interested persons, or any local bar association may appear before the referee in support of or in opposition to the petition at any time or times fixed for the hearings.

(3) *Failure of Petitioner to be Examined.*  For the failure of the petitioner to submit to examination as a witness pursuant to notice given, the referee will dismiss the petition for reinstatement unless good cause is shown for the failure.

(4) *Summary Procedure.*  If after the completion of discovery bar counsel is unable to discover any evidence on which denial of reinstatement may be based and if no other person provides any relevant evidence, bar counsel may, with the approval of the designated reviewer and staff counsel, stipulate to the issue of reinstatement, including conditions for reinstatement.  The stipulation must include a statement of costs as provided elsewhere in these Rules Regulating theThe Florida Bar.

(5) *Evidence of Treatment or Counseling for Dependency or Other Medical Reasons.*  If the petitioner has sought or received treatment or counseling for chemical or alcohol dependency or for other medical reasons that relate to the petitioner's fitness to practice law, the petitioner must waive confidentiality of such treatment or counseling for purposes of evaluation of the petitioner's fitness.  The provisions of rule 3-7.1(d) are applicable to information or records disclosed under this subdivision.

**(h)  Prompt Hearing; Report.**  The referee to whom a petition for reinstatement has been referred by the chief justice will proceed to a prompt

hearing, at the conclusion of which the referee will make and file with the Supreme Court of Florida a report that includes the findings of fact and a recommendation as to whether the petitioner is qualified to resume the practice of law.  The referee must file the report and record in the Supreme Court of Florida.

**(i)  Review.**  Review of referee reports in reinstatement proceedings must be in accordance with rule 3-7.7.

**(j)  Recommendation of Referee and Judgment of the Court.**  If the petitioner is found unfit to resume the practice of law, the petition will be dismissed.  If the petitioner is found fit to resume the practice of law, the referee will enter a report recommending, and the court may enter an order of, reinstatement of the petitioner in The Florida Bar; provided, however, that the reinstatement may be conditioned on the payment of all or part of the costs of the proceeding and on the making of partial or complete restitution to parties harmed by the petitioner's misconduct that led to the petitioner's suspension of membership in The Florida Bar or conduct that led to the petitioner's incapacity; and, if suspension or incapacity of the petitioner has continued for more than 3 years, the reinstatement may be conditioned on proof of competency as may be required by the judgment in the discretion of the Supreme Court of Florida.  Proof may include certification by the Florida Board of Bar Examiners of the successful completion of an examination for admission to The Florida Bar subsequent to the date of the suspension or incapacity.

**(k)  Successive Petitions.**  No petition for reinstatement may be filed within 1 year following an adverse judgment on a petition for reinstatement filed by or on behalf of the same person.  In cases of incapacity no petition for reinstatement may be filed within 6 months following an adverse judgment under this rule.

*(l)*  **Petitions for Reinstatement to Membership in Good Standing.**

(1) *Availability.*  Petitions for reinstatement under this rule are available to members placed on the inactive list for incapacity not related to misconduct and suspended members of the bar when the disciplinary judgment conditions their reinstatement ~~up~~on a showing of compliance with specified conditions.

(2) *Style of Petition.*  Petitions must be styled in the Supreme Court of Florida and filed with the Supreme Court of Florida in accordance with the court's filing requirements, including e-filing requirements where applicable.  A copy must be served on ~~Staff Counsel~~staff counsel, The Florida Bar, 651 East Jefferson Street, Tallahassee, Florida 32399-2300.

(3) *Contents of Petition.* The petition must be verified by the petitioner and accompanied by a written authorization to the District Director of the Internal Revenue Service, authorizing the furnishing of certified copies of the petitioner's tax returns for the past 5 years or since admission to the bar, whichever is greater. The authorization must be furnished on a separate sheet. The petition must have attached as an exhibit a true copy of all disciplinary judgments previously entered against the petitioner. It must also include the petitioner's statement concerning the following:

(A) name, age, residence, address, and number and relation of dependents of the petitioner;

(B) the conduct, offense, or misconduct on which the suspension or incapacity was based, together with the date of such suspension or incapacity;

(C) the names and addresses of all complaining witnesses in any disciplinary proceedings that resulted in suspension; and the name and address of the referee or judge who heard these disciplinary proceedings or of the trial judge, complaining witnesses, and prosecuting lawyer, if suspension was based on conviction of a felony or misdemeanor involving moral turpitude;

(D) the nature of the petitioner's occupation in detail since suspension or incapacity, with names and addresses of all partners, associates in business, and employers, if any, and dates and duration of all these relations and employments;

(E) a statement showing the approximate monthly earnings and other income of the petitioner and the sources from which all earnings and income were derived during this period;

(F) a statement showing all residences maintained during this period, with names and addresses of landlords, if any;

(G) a statement showing all financial obligations of the petitioner including, but not limited to, amounts claimed, unpaid, or owing to The Florida Bar Clients' Security Fund or former clients at the date of filing of the petition, together with the names and addresses of all creditors;

(H)  a statement of restitution made for any and all obligations to all former clients and the Florida Bar Clients' Security Fund and the source and amount of funds used for this purpose;

(I)  a statement showing dates, general nature, and ultimate disposition of every matter involving the arrest or prosecution of the petitioner during the period of suspension for any crime, whether felony or misdemeanor, together with the names and addresses of complaining witnesses, prosecuting lawyers, and trial judges;

(J)  a statement as to whether any applications were made during the period of suspension for a license requiring proof of good character for its procurement; and, for each application, the date and the name and address of the authority to whom it was addressed and its disposition;

(K)  a statement of any procedure or inquiry, during the period of suspension, covering the petitioner's standing as a member of any profession or organization, or holder of any license or office, that involved the censure, removal, suspension, revocation of license, or discipline of the petitioner; and, as to each, the dates, facts, and the disposition, and the name and address of the authority in possession of these records;

(L)  a statement as to whether any charges of fraud were made or claimed against the petitioner during the period of suspension, whether formal or informal, together with the dates and names and addresses of persons making these charges;

(M)  a concise statement of facts claimed to justify reinstatement to The Florida Bar;

(N)  a statement showing the dates, general nature, and final disposition of every civil action in which the petitioner was either a party plaintiff or defendant, together with dates of filing of complaints, titles of courts and causes, and the names and addresses of all parties and of the trial judge or judges, and names and addresses of all witnesses who testified in this action or actions; and

(*O*)  a statement showing what amounts, if any, of the costs assessed against the accused lawyer in the prior disciplinary proceedings against the petitioner have been paid by the petitioner and the source and amount of funds used for this purpose.

(4) *Comments on Petition.* On the appointment of a referee and bar counsel, copies of the petition will be furnished by the bar counsel to local board members, local grievance committees, and to other persons mentioned in this rule. Persons or groups that wish to respond must direct their comments to bar counsel. The proceedings and finding of the referee will relate to those matters described in this rule and also to those matters tending to show the petitioner's rehabilitation, present fitness to resume the practice of law, and the effect of the proposed reinstatement on the administration of justice and purity of the courts and confidence of the public in the profession.

(5) *Costs Deposit.* The petition must be accompanied by a deposit for costs of $500.

**(m) Costs.**

(1) *Taxable Costs.* Taxable costs of the proceedings must include only:

(A) investigative costs, including travel and out-of-pocket expenses;

(B) court reporters' fees;

(C) copy costs;

(D) telephone charges;

(E) fees for translation services;

(F) witness expenses, including travel and out-of-pocket expenses;

(G) travel and out-of-pocket expenses of the referee;

(H) travel and out-of-pocket expenses of counsel in the proceedings, including the petitioner if acting as counsel; and

(I) an administrative fee in the amount of $1250 when costs are assessed in favor of the bar.

(2) *Discretion of Referee.* The referee has discretion to award costs and, absent an abuse of discretion, the referee's award will not be reversed.

(3) *Assessment of Bar Costs.* The costs incurred by the bar in any reinstatement case may be assessed against the petitioner unless it is shown that the costs were unnecessary, excessive, or improperly authenticated.

(4) *Assessment of Petitioner's Costs.*  The referee may assess the petitioner's costs against the bar in the event that there was no justiciable issue of either law or fact raised by the bar unless it is shown that the costs were unnecessary, excessive, or improperly authenticated.

**(n)  Readmission; Applicability.**  A former member who has been disbarred, disbarred on consent, or whose petition for disciplinary resignation or revocation has been accepted may be admitted again only upon full compliance with the rules and regulations governing admission to the bar.  No application for readmission following disbarment, disbarment on consent, or disciplinary resignation or revocation may be tendered until such time as all restitution and disciplinary costs as may have been ordered or assessed have been paid together with any interest accrued.

(1) *Readmission After Disbarment.*  Except as might be otherwise provided in these rules, no application for admission may be tendered within 5 years after the date of disbarment or such longer period of time as the court might determine in the disbarment order.  An order of disbarment that states the disbarment is permanent precludes readmission to The Florida Bar.

(2) *Readmission After Disciplinary Resignation or Revocation.*  A lawyer's petition for disciplinary resignation or revocation states that it is without leave to apply for readmission will preclude any readmission. A lawyer who was granted a disciplinary resignation or revocation may not apply for readmission until all conditions of the Supreme Court order granting the disciplinary resignation or revocation have been complied with.

## Comment

To further illuminate the community service requirements of ~~Rule~~rule 3-7.10(f)(3)(G), bar members can take guidance from the Florida Supreme Court's decision in *Florida Board of Bar Examiners re M.L.B.*, 766 So. 2d 994, 998-999 (Fla. 2000). The court held that rules requiring community service "contemplate and we wish to encourage positive actions beyond those one would normally do for self benefit, including, but certainly not limited to, working as a guardian ad litem, volunteering on a regular basis with shelters for the homeless or victims of domestic violence, or maintaining substantial involvement in other charitable, community, or educational organizations whose value system, overall mission and activities are directed to good deeds and humanitarian concerns impacting a broad base of citizens."

Court decisions dealing with reinstatements and other discipline provide further guidance as to what specific actions meet the test of community service. The court approved dismissal of a petition for reinstatement where the respondent had no community service and had devoted all her time during suspension to raising her young children. *Fla. Bar v. Tauler*, 837 So. 2d 413 (Fla. 2003). In a more recent decision, the court did not specifically mention lack of community service in denying reinstatement, but the respondent had shown no evidence of work for others outside his family in his petition. Respondent's community service consisted solely of taking care of his elderly parents and his small child. *Fla. Bar v. Juan Baraque*, 43 So. 3d 691 (Fla. 2010).

## RULE 3-7.11  GENERAL RULES OF PROCEDURE

(a)  **Time is Directory.**  Except as provided ~~herein~~in this rule, the time intervals required are directory only and are not jurisdictional.  Failure to observe ~~such~~these directory intervals may result in contempt of the agency having jurisdiction or of the Supreme Court of Florida, but will not prejudice the offending party, except where ~~so~~ provided.

(b)  **Process.**  Every member of The Florida Bar ~~is charged with notifying~~must notify The Florida Bar of any change of mailing address, e-mail address (unless the lawyer has been excused by The Florida Bar or ~~court~~the Supreme Court of Florida from e-filing and e-service), and military status. The Florida Bar may serve notice of formal complaints in bar proceedings by certified U.S. Postal Service ~~certified~~ mail return receipt requested to the bar member's record bar address unless the Supreme Court of Florida directs other service.  Every lawyer of another state who is admitted pro hac vice in a specific case before a court of record in Florida may be served by certified U.S. Postal Service ~~certified~~ mail return receipt requested addressed to the lawyer in care of the Florida lawyer who was associated or appeared with the lawyer admitted pro hac vice or addressed to the Florida lawyer at any address listed by the lawyer in the pleadings in the case.

~~Provided, however, when a person is represented by counsel, service~~Service of process and notices must be directed to counsel whenever a person is represented by counsel.

(c)  **Notice in Lieu of Process.**  Every member of The Florida Bar is within the jurisdiction of the Supreme Court of Florida and its agencies under these rules, and service of process is not required to obtain jurisdiction over respondents in disciplinary proceedings~~; but due process requires reasonable notice and this notice will be effected by service of the complaint on the respondent by mailing a copy of~~

~~The Florida Bar's formal complaint~~.  The Florida Bar will serve the complaint on the respondent by certified U.S. Postal Service mail return receipt requested to the respondent's record bar address or a more current address that may be known to the person serving the complaint ~~or other process~~.

When the respondent is represented by counsel in a referee proceeding, ~~due process is satisfied by service of the formal complaint on the respondent's counsel by mailing a copy~~The Florida Bar will serve the formal complaint by certified U.S. Postal Service mail return receipt requested to the record bar address of the respondent's counsel or a more current address that may be known to the person serving the complaint.

All other correspondence between The Florida Bar and respondents or their counsel, including bar inquiries that require responses during the investigative stage of a disciplinary proceeding, may be made by e-mail to the respondent's record bar e-mail address or the record bar e-mail address of respondent's counsel. E-mail correspondence is encouraged in all instances except in service of a formal complaint or subpoena, or where a court directs otherwise.  If a lawyer has been excused by The Florida Bar or a court from e-filing and e-service~~,~~ or service cannot be made by e-mail, service by first class ~~postal~~U.S. Postal Service mail is sufficient, except where these rules or a court direct otherwise.

**(d)  Issuance of Subpoenas.**  Subpoenas for witnesses' attendance and the production of documentary evidence, except before a circuit court, must be issued as follows~~:~~.

(1) *Referees.*  Subpoenas for witnesses' attendance and production of documentary evidence before a referee must be issued by the referee and must be served either in the manner provided by law for the service of process or by an investigator employed by The Florida Bar.

(2) *Grievance Committees.*  Subpoenas for witnesses' attendance and the production of documentary evidence must be issued by the chair or vice-chair of a grievance committee as part of an investigation authorized by the committee.  These subpoenas may be served by any member of the grievance committee, by an investigator employed by The Florida Bar, or in the manner provided by law for service of process.

(3) *Bar Counsel Investigations.*  Subpoenas for witnesses' attendance and the production of documentary evidence before bar counsel in an initial investigation must be issued by the chair or vice chair of a grievance

committee to which the matter will be assigned, if appropriate. These subpoenas may be served by an investigator employed by The Florida Bar or in the manner provided by law for the service of process.

(4) *After Grievance Committee Action, But Before Appointment of Referee.* Subpoenas for witnesses' attendance and the production of documentary evidence before bar counsel when conducting further investigation after action by a grievance committee, but before appointment of a referee, must be issued by the chair or vice chair of the grievance committee to which the matter was assigned. These subpoenas may be served by an investigator employed by The Florida Bar or in the manner provided by law for the service of process.

(5) *Board of Governors.* Subpoenas for witnesses' attendance and the production of documentary evidence before the board of governors must be issued by the executive director and must be served by an investigator employed by The Florida Bar or in the manner provided by law for service of process.

(6) *Confidential Proceedings.* If the proceeding is confidential, a subpoena must not name the respondent but must style the proceeding as "Confidential Proceeding by The Florida Bar under the Rules of Discipline."

(7) *Contempt.*

(A) Generally. Any persons who, without adequate excuse, fail to obey a subpoena served on them under these rules, may be cited for contempt of ~~this court~~the Supreme Court of Florida in the manner provided by this rule.

(B) Subpoenas for Trust Accounting Records. Members of the bar are under an obligation to maintain trust accounting records as required by these rules and, as a condition of the privilege of practicing law in Florida, may not assert any privilege personal to the lawyer that may be applicable to production of these records in any disciplinary proceedings under these rules.

(i) A respondent who has been found in willful noncompliance with a subpoena for trust accounting records may be cited for contempt under this rule only if the disciplinary agency that issued the subpoena has found that no good cause existed for the respondent's failure to comply.

(ii)  The disciplinary agency that issued the subpoena must hear the issue of noncompliance and issue findings on the noncompliance within 30 days of a request for issuance of the notice of noncompliance.

(8)  *Assistance to Other Lawyer Disciplinary Jurisdictions.*  On receipt of a subpoena certified to be issued under the rules or laws of another lawyer disciplinary jurisdiction, the executive director may issue a subpoena directing a person domiciled or found within the state of Florida to give testimony ~~and/~~or produce documents or other evidence for use in the other jurisdiction's lawyer disciplinary proceedings as directed in the subpoena of the other jurisdiction. The practice and procedure applicable to subpoenas issued under this subdivision will be that of the other jurisdiction, except that:

(A)  the testimony or production must be only in the county in which the person resides or is employed, or as otherwise fixed by the executive director for good cause shown; and

(B)  compliance with any subpoena issued pursuant to this subdivision and contempt for failure in this respect must be sought under these rules.

**(e)  Oath of Witness.**  Every witness in every proceeding under these rules must be sworn to tell the truth.  Violation of this oath is an act of contempt of ~~this court~~the Supreme Court of Florida.

**(f)  Contempt.**  When a disciplinary agency, as defined elsewhere in these rules, finds that a person is in contempt under these rules, that person may be cited for contempt in the following manner~~:~~.

(1)  *Generally.*

(A)  Petition for Contempt and Order to Show Cause.  When a person is found in contempt by a disciplinary agency, bar counsel must file a petition for contempt and order to show cause with the Supreme Court of Florida.

(B)  Order to Show Cause; Suspension for Noncompliance with Subpoena for Trust Accounting Records.  On review of a petition for contempt and order to show cause, the ~~supreme court~~Supreme Court of Florida may issue an order directing the person to show cause why the person should not be held in contempt and appropriate sanctions imposed. ~~On review of a petition for contempt and order to show cause for noncompliance with a trust accounting subpoena, the supreme court~~The

- 33 -

Supreme Court of Florida may also issue an order suspending the respondent from the practice of law in Florida until the member fully complies with the subpoena and any further order of the ~~court~~Supreme Court of Florida.

The order of the ~~supreme court~~Supreme Court of Florida must fix a time for a response.

(C) Response to Order to Show Cause.

(i) Generally. Any member subject to an order to show cause must file a response as directed by the ~~court~~Supreme Court of Florida.

(ii) Noncompliance with a Subpoena for Trust Account Records. Any member subject to an order to show cause for noncompliance with a subpoena for trust accounting records may request the ~~court~~Supreme Court of Florida:

a. to withhold entry of an order of suspension, if filed within 10 days of the filing of the petition for contempt and order to show cause, or another time the ~~court~~Supreme Court of Florida may direct in the order to show cause; or

b. to terminate or modify the order of suspension at any time after the order of suspension is issued. The ~~court~~Supreme Court of Florida may terminate, modify, or withhold entry of an order of suspension if the member establishes good cause for failure to comply with the subpoena for trust account records.

(D) Failure to Respond to Order to Show Cause. On failure to timely respond to an order to show cause, the matters alleged in the petition are deemed admitted and the ~~supreme court~~Supreme Court of Florida may enter a judgment of contempt and impose appropriate sanctions. Failure to respond may be an additional basis for the ~~supreme court~~Supreme Court of Florida to enter a judgment of contempt and to impose sanctions.

(E) Reply of The Florida Bar. When a timely response to an order to show cause is filed, The Florida Bar will have 10 days, or another time period as the ~~supreme court~~Supreme Court of Florida may order, from the date of filing to file a reply.

- 34 -

(F)  Supreme Court of Florida Action.  ~~After the time to respond to an order to show cause has expired and no response is timely filed, or after the reply of The Florida Bar has been filed, or the time has expired without any filing, the supreme court~~The Supreme Court of Florida will review the matter and issue an appropriate judgment after the time to respond to an order to show cause has expired and no response is timely filed, or after the reply of The Florida Bar has been filed, or the time has expired without any filing.  This judgment may include any sanction that a court may impose for contempt and, if the person found in contempt is a member of The Florida Bar, may include any disciplinary sanction authorized under these rules.

If the ~~supreme court~~Supreme Court of Florida requires factual findings, ~~the supreme court~~it may direct appointment of a referee as provided in these rules.  Proceedings for contempt referred to a referee must be processed in the same manner as disciplinary proceedings under these rules, including, but not limited to, the procedures provided in these rules for conditional guilty pleas for consent judgments.  If the ~~court~~Supreme Court of Florida determines it necessary to refer a request to terminate, modify, or withhold entry of an order of suspension based on a petition for contempt and order to show cause for noncompliance with a subpoena for trust account records to a referee for receipt of evidence, the referee proceedings must be expedited and conducted in the same manner as proceedings before a referee on a petition to terminate, modify, or withhold an order of emergency suspension, as provided in these rules.

(G)  Preparation and Filing of Report of Referee and Record.  The referee must prepare and file a report and the record in cases brought under this rule.  The procedures provided for in the rule on procedure before a referee under these rules apply to the preparation, filing, and review of the record.

(H)  Appellate Review of Report of Referee.  Any party to the contempt proceedings may seek review of the report of referee in the manner provided in these rules for appellate review of disciplinary proceedings.

(2)  *Failure to Respond to Official Bar Inquiries.*

(A)  Petition for Contempt and Order to Show Cause.  When a respondent is found in contempt by a disciplinary agency for failure to

respond to an official bar inquiry without good cause shown, bar counsel must file a petition for contempt and order to show cause with the Supreme Court of Florida.

(B) Response to Petition for Contempt and Order to Show Cause. The respondent will have 10 days from the date of filing of a petition authorized by this subdivision to file a response.

(C) ~~Supreme Court~~Supreme Court of Florida Action.

(i) Entry of Suspension Order. The ~~court~~Supreme Court of Florida will enter an order suspending the respondent for failure to respond to an official bar inquiry after the respondent files a response to the order to show cause or the time for filing a response has expired, unless ~~the court~~it orders otherwise.

(ii) Assignment to Referee. If the ~~supreme court~~Supreme Court of Florida requires factual findings, ~~the supreme court~~it may direct appointment of a referee as provided in these rules. Proceedings for contempt referred to a referee must be processed in the same manner as disciplinary proceedings under these rules, including, but not limited to, the provisions provided for conditional guilty pleas for consent judgments.

**(g) Court Reporters.** Court reporters who are employees of The Florida Bar may be appointed to report any disciplinary proceeding. If the respondent objects at least 48 hours in advance of the matter to be recorded, an independent contract reporter may be retained. Reasonable costs for independent court reporter service will be taxed to the respondent for payment to The Florida Bar.

**(h) Disqualification as Trier and ~~Attorney~~Lawyer ~~for Respondent~~ Due to Conflict.**

(1) *Grievance Committee Members, Members of the Board of Governors, and Employees of The Florida Bar.* ~~No grievance committee member, member of the board of governors, or employee of The Florida Bar may represent a party other than The Florida Bar in disciplinary proceedings authorized under these rules.~~

(2) *Former Grievance Committee Members, Former Board Members, and Former Employees.* ~~No former member of a grievance committee, former member of the board of governors, or former employee of The Florida Bar may~~

represent any party other than The Florida Bar in disciplinary proceedings authorized under these rules if personally involved to any degree in the matter while a member of the grievance committee, the board of governors, or while an employee of The Florida Bar.

A former member of the board of governors, former member of any grievance committee, or former employee of The Florida Bar who did not participate personally in any way in the investigation or prosecution of the matter or in any related matter in which the lawyer seeks to be a representative, and who did not serve in a supervisory capacity over the investigation or prosecution, may not represent any party except The Florida Bar for 1 year after this service without the express consent of the board.

(3) *Partners, Associates, Employers, or Employees of the Firms of Grievance Committee Members or Board of Governors Members Precluded From Representing Parties Other Than The Florida Bar.* Members of the firms of grievance committee members or board members may not represent any party other than The Florida Bar in disciplinary proceedings authorized under these rules without the express consent of the board.

(4) *Partners, Associates, Employers, or Employees of the Firms of Former Grievance Committee Members or Former Board of Governors Members Precluded From Representing Parties Other Than The Florida Bar.* Lawyers in the firms of former board members or former grievance committee members may not represent any party other than The Florida Bar in disciplinary proceedings authorized under these rules for 1 year after the former member's service without the express consent of the board.

(1) *Representation Prohibited.* Lawyers may not represent a party other than The Florida Bar in disciplinary proceedings authorized by these rules if they are:

(A)  currently serving on a grievance committee or the board of governors;

(B)  employees of The Florida Bar; or

(C)  former members of a grievance committee, former members of the board of governors, or former employees of The Florida Bar if personally involved to any degree in the matter while a member of a grievance committee or the board of governors, or while an employee of The Florida Bar.

(2) *Representation Permitted With Consent by the Board of Governors.* Lawyers may represent a party other than The Florida Bar in disciplinary proceedings authorized by these rules only after receiving consent from the executive director or board of governors if they are:

(A) former members of a grievance committee, former members of the board of governors, or former employees of The Florida Bar who did not participate personally in any way in the matter or in any related matter in which the lawyer seeks to be a representative and who did not serve in a supervisory capacity over the matter within 1 year of the service or employment;

(B) a partner, associate, employer, or employee of a member of a grievance committee or a member of the board of governors; or

(C) a partner, associate, employer, or employee of a former member of a grievance committee or a former member of the board of governors within 1 year of the former member's service on the grievance committee or board of governors.

**(i) Proceedings After Disbarment.** The respondent may consent to or the ~~court~~Supreme Court of Florida may order further proceedings after disbarment, which may include: an audit of trust, operating, or personal bank accounts, the cost of which may be assessed as provided in these rules; a requirement that the respondent provide a financial affidavit attesting to personal and business finances; and maintenance of a current mailing address for a stated period of time.

## RULE 3-7.15  ~~AMENDMENTS~~RESERVED FOR FUTURE USE

~~Petitions for revision of or amendments to chapter 3 will be entertained by this court when presented by the board of governors or by not fewer than 50 members in good standing of The Florida Bar. Notice of intention to file such petition together with a copy of the proposed amendment shall be published in The Florida Bar News no less than 30 days prior to the filing of such petition. The court will thereafter accept objections or comments on such petition.~~

## CHAPTER 4 RULES OF PROFESSIONAL CONDUCT
## 4-1  CLIENT-LAWYER RELATIONSHIP
## RULE 4-1.2  OBJECTIVES AND SCOPE OF REPRESENTATION

**(a) Lawyer to Abide by Client's Decisions.** Subject to subdivisions (c) and (d), a lawyer must abide by a client's decisions concerning the objectives of

representation, and, as required by rule 4-1.4, must reasonably consult with the client as to the means by which they are to be pursued. A lawyer may take ~~such~~ action on behalf of the client ~~as~~that is impliedly authorized to carry out the representation. A lawyer must abide by a client's decision whether to settle a matter. In a criminal case, the lawyer must abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial, and whether the client will testify.

**(b)  No Endorsement of Client's Views or Activities.**  A lawyer's representation of a client, including representation by appointment, does not constitute an endorsement of the client's political, economic, social, or moral views or activities.

**(c)  Limitation of Objectives and Scope of Representation.**  If not prohibited by law or rule, a lawyer and client may agree to limit the objectives or scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent in writing, except that a lawyer giving advice in a short-term limited legal services program under rule 4-6.6 is not required to obtain the consent in writing. If the lawyer and client agree to limit the scope of the representation, the lawyer must advise the client regarding applicability of the rule prohibiting communication with a represented person.

**(d)  Criminal or Fraudulent Conduct.**  A lawyer must not counsel a client to engage, or assist a client, in conduct that the lawyer knows or reasonably should know is criminal or fraudulent. However, a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning, or application of the law.

**Comment**

**Allocation of authority between client and lawyer**

Subdivision (a) confers on the client the ultimate authority to determine the purposes to be served by legal representation, within the limits imposed by law and the lawyer's professional obligations. Within those limits, a client also has a right to consult with the lawyer about the means to be used in pursuing those objectives. At the same time, a lawyer is not required to pursue objectives or employ means simply because a client may wish that the lawyer do so. A clear distinction between objectives and means sometimes cannot be drawn, and in many cases the client-lawyer relationship partakes of a joint undertaking. In questions of means,

the lawyer should assume responsibility for technical and legal tactical issues but should defer to the client regarding such questions as the expense to be incurred and concern for third persons who might be adversely affected. Law defining the lawyer's scope of authority in litigation varies among jurisdictions. The decisions specified in subdivision (a), such as whether to settle a civil matter, must also be made by the client. See rule 4-1.4(a)(1) for the lawyer's duty to communicate with the client about these decisions. With respect to the means by which the client's objectives are to be pursued, the lawyer must consult with the client as required by rule 4-1.4(a)(2) and may take action as is impliedly authorized to carry out the representation.

On occasion, however, a lawyer and a client may disagree about the means to be used to accomplish the client's objectives. The lawyer should consult with the client and seek a mutually acceptable resolution of the disagreement. If these efforts are unavailing and the lawyer has a fundamental disagreement with the client, the lawyer may withdraw from the representation. See rule 4-1.16(b)(42). Conversely, the client may resolve the disagreement by discharging the lawyer. See rule 4-1.16(a)(3).

At the outset of a representation, the client may authorize the lawyer to take specific action on the client's behalf without further consultation. Absent a material change in circumstances and subject to rule 4-1.4, a lawyer may rely on the advance authorization. The client may, however, revoke this authority at any time.

In a case in which the client appears to be suffering mental disability, the lawyer's duty to abide by the client's decisions is to be guided by reference to rule 4-1.14.

## Independence from client's views or activities

Legal representation should not be denied to people who are unable to afford legal services or whose cause is controversial or the subject of popular disapproval. By the same token representing a client does not constitute approval of the client's views or activities.

## Agreements limiting scope of representation

The scope of services to be provided by a lawyer may be limited by agreement with the client or by the terms under which the lawyer's services are made available to the client. When a lawyer has been retained by an insurer to represent an insured, for example, the representation may be limited to matters related to the

insurance coverage.  A limited representation may be appropriate because the client has limited objectives for the representation.  In addition, the terms upon which representation is undertaken may exclude specific means that might otherwise be used to accomplish the client's objectives.  Limitations may exclude actions that the client thinks are too costly or that the lawyer regards as repugnant or imprudent, or which the client regards as financially impractical.

Although this rule affords the lawyer and client substantial latitude to limit the representation if not prohibited by law or rule, the limitation must be reasonable under the circumstances.  If, for example, a client's objective is limited to securing general information about the law the client needs in order to handle a common and typically uncomplicated legal problem, the lawyer and client may agree that the lawyer's services will be limited to a brief consultation.  This limitation, however, would not be reasonable if the time allotted was not sufficient to yield advice upon which the client could rely.  In addition, a lawyer and client may agree that the representation will be limited to providing assistance out of court, including providing advice on the operation of the court system and drafting pleadings and responses.  If the lawyer assists a pro se litigant by drafting any document to be submitted to a court, the lawyer is not obligated to sign the document.  However, the lawyer must indicate "Prepared with the assistance of counsel" on the document to avoid misleading the court, which, otherwise might be under the impression that the person, who appears to be proceeding pro se, has received no assistance from a lawyer.  If not prohibited by law or rule, a lawyer and client may agree that any in-court representation in a family law proceeding be limited as provided for in Family Law Rule of Procedure 12.040.  For example, a lawyer and client may agree that the lawyer will represent the client at a hearing regarding child support and not at the final hearing or in any other hearings.  For limited in-court representation in family law proceedings, the lawyer must communicate to the client the specific boundaries and limitations of the representation so that the client is able to give informed consent to the representation.

Regardless of the circumstances, a lawyer providing limited representation forms a client-lawyer relationship with the litigant, and owes the client all attendant ethical obligations and duties imposed by the Rules Regulating The Florida Bar, including, but not limited to, duties of competence, communication, confidentiality, and avoidance of conflicts of interest.  Although an agreement for limited representation does not exempt a lawyer from the duty to provide competent representation, the limitation is a factor to be considered when

determining the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation.  See rule 4-1.1.

An agreement concerning the scope of representation must accord with the Rules of Professional Conduct and law.  For example, the client may not be asked to agree to representation so limited in scope as to violate rule 4-1.1 or to surrender the right to terminate the lawyer's services or the right to settle litigation that the lawyer might wish to continue.

## Criminal, fraudulent, and prohibited transactions

A lawyer is required to give an honest opinion about the actual consequences that appear likely to result from a client's conduct.  The fact that a client uses advice in a course of action that is criminal or fraudulent does not, of itself, make a lawyer a party to the course of action.  However, a lawyer may not assist a client in conduct that the lawyer knows or reasonably should know to be criminal or fraudulent.  There is a critical distinction between presenting an analysis of legal aspects of questionable conduct and recommending the means by which a crime or fraud might be committed with impunity.

When the client's course of action has already begun and is continuing, the lawyer's responsibility is especially delicate.  The lawyer is required to avoid assisting the client, for example, by drafting or delivering documents that the lawyer knows are fraudulent or by suggesting how the wrongdoing might be concealed.  A lawyer may not continue assisting a client in conduct that the lawyer originally supposed was legally proper but then discovers is criminal or fraudulent. The lawyer must, therefore, withdraw from the representation of the client in the matter.  See rule 4-1.16(a).  In some cases, withdrawal alone might be insufficient. It may be necessary for the lawyer to give notice of the fact of withdrawal and to disaffirm any opinion, document, affirmation, or the like.  See rule 4-4.1.

Where the client is a fiduciary, the lawyer may be charged with special obligations in dealings with a beneficiary.

Subdivision (d) applies whether or not the defrauded party is a party to the transaction.  For example, a lawyer must not participate in a transaction to effectuate criminal or fraudulent avoidance of tax liability.  Subdivision (d) does not preclude undertaking a criminal defense incident to a general retainer for legal services to a lawful enterprise.  The last sentence of subdivision (d) recognizes that determining the validity or interpretation of a statute or regulation may require a

course of action involving disobedience of the statute or regulation or of the interpretation placed upon it by governmental authorities.

If a lawyer comes to know or reasonably should know that a client expects assistance not permitted by the Rules of Professional Conduct or other law or if the lawyer intends to act contrary to the client's instructions, the lawyer must consult with the client regarding the limitations on the lawyer's conduct.  See rule 4-1.4(a)(5).

## RULE 4-1.5 FEES AND COSTS FOR LEGAL SERVICES

**(a)  Illegal, Prohibited, or Clearly Excessive Fees and Costs.**  ~~An attorney shall~~A lawyer must not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or cost, or a fee generated by employment that was obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar.  A fee or cost is clearly excessive when:

(1)  after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee or the cost exceeds a reasonable fee or cost for services provided to such a degree as to constitute clear overreaching or an unconscionable demand by the attorney; or

(2)  the fee or cost is sought or secured by the attorney by means of intentional misrepresentation or fraud upon the client, a nonclient party, or any court, as to either entitlement to, or amount of, the fee.

**(b)  Factors to Be Considered in Determining Reasonable Fees and Costs.**

(1)  Factors to be considered as guides in determining a reasonable fee include:

(A)  the time and labor required, the novelty, complexity, ~~and~~ difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(B)  the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;

(C)  the fee, or rate of fee, customarily charged in the locality for legal services of a comparable or similar nature;

(D)  the significance of, or amount involved in, the subject matter of the representation, the responsibility involved in the representation, and the results obtained;

(E)  the time limitations imposed by the client or by the circumstances and, as between attorney and client, any additional or special time demands or requests of the attorney by the client;

(F)  the nature and length of the professional relationship with the client;

(G)  the experience, reputation, diligence, and ability of the lawyer or lawyers performing the service and the skill, expertise, or efficiency of effort reflected in the actual providing of such services; and

(H)  whether the fee is fixed or contingent, and, if fixed as to amount or rate, then whether the client's ability to pay rested to any significant degree on the outcome of the representation.

(2)  Factors to be considered as guides in determining reasonable costs include:

(A)  the nature and extent of the disclosure made to the client about the costs;

(B)  whether a specific agreement exists between the lawyer and client as to the costs a client is expected to pay and how a cost is calculated that is charged to a client;

(C)  the actual amount charged by third party providers of services to the attorney;

(D)  whether specific costs can be identified and allocated to an individual client or a reasonable basis exists to estimate the costs charged;

(E)  the reasonable charges for providing in-house service to a client if the cost is an in-house charge for services; and

(F)  the relationship and past course of conduct between the lawyer and the client.

All costs are subject to the test of reasonableness set forth in subdivision (a) above.  When the parties have a written contract in which the method is

established for charging costs, the costs charged ~~thereunder shall~~under that contract will be presumed reasonable.

**(c) Consideration of All Factors.** In determining a reasonable fee, the time devoted to the representation and customary rate of fee need not be the sole or controlling factors. All factors set forth in this rule should be considered, and may be applied, in justification of a fee higher or lower than that which would result from application of only the time and rate factors.

**(d) Enforceability of Fee Contracts.** Contracts or agreements for attorney's fees between attorney and client will ordinarily be enforceable according to the terms of such contracts or agreements, unless found to be illegal, obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar, prohibited by this rule, or clearly excessive as defined by this rule.

**(e) Duty to Communicate Basis or Rate of Fee or Costs to Client and Definitions.**

(1) *Duty to Communicate.* When the lawyer has not regularly represented the client, the basis or rate of the fee and costs ~~shall~~must be communicated to the client, preferably in writing, before or within a reasonable time after commencing the representation. A fee for legal services that is nonrefundable in any part ~~shall~~must be confirmed in writing and ~~shall~~must explain the intent of the parties as to the nature and amount of the nonrefundable fee. The test of reasonableness found in subdivision (b), above, applies to all fees for legal services without regard to their characterization by the parties.

The fact that a contract may not be in accord with these rules is an issue between the ~~attorney~~lawyer and client and a matter of professional ethics, but is not the proper basis for an action or defense by an opposing party when fee-shifting litigation is involved.

(2) *Definitions.*

(A) Retainer. A retainer is a sum of money paid to a lawyer to guarantee the lawyer's future availability. A retainer is not payment for past legal services and is not payment for future services.

(B) Flat Fee. A flat fee is a sum of money paid to a lawyer for all legal services to be provided in the representation. A flat fee may be termed "non-refundable."

(C)  Advance Fee.  An advanced fee is a sum of money paid to the lawyer against which the lawyer will bill the client as legal services are provided.

**(f)  Contingent Fees.**  As to contingent fees:

(1)  A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by subdivision (f)(3) or by law.  A contingent fee agreement ~~shall~~must be in writing and ~~shall~~must state the method by which the fee is to be determined, including the percentage or percentages that ~~shall~~will accrue to the lawyer in the event of settlement, trial, or appeal~~,~~; litigation and other expenses to be deducted from the recovery~~,~~; and whether ~~such~~those expenses are to be deducted before or after the contingent fee is calculated.  ~~Upon~~On conclusion of a contingent fee matter, the lawyer ~~shall~~must provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

(2)  Every lawyer who accepts a retainer or enters into an agreement, express or implied, for compensation for services rendered or to be rendered in any action, claim, or proceeding ~~whereby~~in which the lawyer's compensation is to be dependent or contingent in whole or in part ~~up~~on the successful prosecution or settlement ~~thereof shall~~must do so only where ~~such~~the fee arrangement is reduced to a written contract, signed by the client, and by a lawyer for the lawyer or for the law firm representing the client.  No lawyer or firm may participate in the fee without the consent of the client in writing. Each participating lawyer or law firm ~~shall~~must sign the contract with the client and ~~shall~~must agree to assume joint legal responsibility to the client for the performance of the services in question as if each were partners of the other lawyer or law firm involved.  The client ~~shall~~must be furnished with a copy of the signed contract and any subsequent notices or consents.  All provisions of this rule ~~shall~~will apply to such fee contracts.

(3)  A lawyer ~~shall~~must not enter into an arrangement for, charge, or collect:

(A)  any fee in a domestic relations matter, the payment or amount of which is contingent ~~up~~on the securing of a divorce or ~~up~~on the amount of alimony or support, or property settlement in lieu thereof; or

(B)  a contingent fee for representing a defendant in a criminal case.

- 46 -

(4)  A lawyer who enters into an arrangement for, charges, or collects any fee in an action or claim for personal injury or for property damages or for death or loss of services resulting from personal injuries based upon tortious conduct of another, including products liability claims, wherebyin which the compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof shallmust do so only under the following requirements:

(A)  The contract shallmust contain the following provisions:

(i)  "The undersigned client has, before signing this contract, received and read the statement of client's rights and understands each of the rights set forth thereinin it.  The undersigned client has signed the statement and received a signed copy to refer to while being represented by the undersigned attorney(s)lawyer(s)."

(ii)  "This contract may be cancelled by written notification to the attorneylawyer at any time within 3 business days of the date the contract was signed, as shown below, and if cancelled the client shall not beis not obligated to pay any fees to the attorney for the work performed during that time.  If the attorneylawyer has advanced funds to others in representation of the client, the attorneylawyer is entitled to be reimbursed for such amounts asthat the attorneylawyer has reasonably advanced on behalf of the client."

(B)  The contract for representation of a client in a matter set forth in subdivision (f)(4) may provide for a contingent fee arrangement as agreed upon by the client and the lawyer, except as limited by the following provisions:

(i)  Without prior court approval as specified below, any contingent fee that exceeds the following standards shall beare presumed, unless rebutted, to be clearly excessive:

a.  Before the filing of an answer or the demand for appointment of arbitrators or, if no answer is filed or no demand for appointment of arbitrators is made, the expiration of the time period provided for such action:

1.  33 1/3% of any recovery up to $1 million; plus

- 47 -

2. 30% of any portion of the recovery between $1 million and $2 million; plus

3. 20% of any portion of the recovery exceeding $2 million.

b. After the filing of an answer or the demand for appointment of arbitrators or, if no answer is filed or no demand for appointment of arbitrators is made, the expiration of the time period provided for such action, through the entry of judgment:

1. 40% of any recovery up to $1 million; plus

2. 30% of any portion of the recovery between $1 million and $2 million; plus

3. 20% of any portion of the recovery exceeding $2 million.

c. If all defendants admit liability at the time of filing their answers and request a trial only on damages:

1. 33 1/3% of any recovery up to $1 million; plus

2. 20% of any portion of the recovery between $1 million and $2 million; plus

3. 15% of any portion of the recovery exceeding $2 million.

d. An additional 5% of any recovery after institution of any appellate proceeding is filed or post-judgmentpostjudgment relief or action is required for recovery on the judgment.

(ii) If any client is unable to obtain a lawyer of the client's choice because of the limitations set forth in subdivision (f)(4)(B)(i), the client may petition the court in which the matter would be filed, if litigation is necessary, or if that court will not accept jurisdiction for the fee approval, the circuit court in which the cause of action arose, for approval of any fee contract between the client and a lawyer of the client's choosing. Authorization will be given if the court determines the client has a complete understanding of the client's rights and the terms of the proposed contract. The application for authorization of the

contract can be filed as a separate proceeding before suit or simultaneously with the filing of a complaint.  Proceedings on the petition may occur before service on the defendant and this aspect of the file may be sealed.  A petition under this subdivision must contain a certificate showing service on the client and, if the petition is denied, a copy of the petition and order denying the petition must be served on The Florida Bar in Tallahassee by the member of the bar who filed the petition.  Authorization of such a contract does not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive under subdivisions (a) and (b).

(iii)  Subject to the provisions of 4-1.5(f)(4)(B)(i) and (ii), a lawyer who enters into an arrangement for, charges, or collects any fee in an action or claim for medical liability wherebyin which the compensation is dependent or contingent in whole or in part uponon the successful prosecution or settlement thereof shallmust provide the language of article I, section 26 of the Florida Constitution to the client in writing and shallmust orally inform the client that:

a.  Unless waived, in any medical liability claim involving a contingency fee, the claimant is entitled to receive no less than 70% of the first $250,000 of all damages received by the claimant, exclusive of reasonable and customary costs, whether received by judgment, settlement, or otherwise, and regardless of the number of defendants.  The claimant is entitled to 90% of all damages in excess of $250,000, exclusive of reasonable and customary costs and regardless of the number of defendants.

b.  If a lawyer chooses not to accept the representation of a client under the terms of article I, section 26 of the Florida Constitution, the lawyer shallmust advise the client, both orally and in writing, of alternative terms, if any, under which the lawyer would accept the representation of the client, as well as the client's right to seek representation by another lawyer willing to accept the representation under the terms of article I, section 26 of the Florida Constitution, or a lawyer willing to accept the representation on a fee basis that is not contingent.

c.  If any client desires to waive any rights under article I, section 26 of the Florida Constitution in order to obtain a lawyer of the client's choice, a client may do so by waiving such rights in

- 49 -

writing, under oath, and in the form provided in this rule.  The lawyer ~~shall~~must provide each client a copy of the written waiver and ~~shall~~must afford each client a full and complete opportunity to understand the rights being waived as set forth in the waiver.  A copy of the waiver, signed by each client and lawyer, ~~shall~~must be given to each client to retain, and the lawyer ~~shall~~must keep a copy in the lawyer's file pertaining to the client.  The waiver ~~shall~~must be retained by the lawyer with the written fee contract and closing statement under the same conditions and requirements provided in 4-1.5(f)(5).

## WAIVER OF THE CONSTITUTIONAL RIGHT PROVIDED IN ARTICLE I, SECTION 26 OF THE FLORIDA CONSTITUTION

On November 2, 2004, voters in the State of Florida approved The Medical Liability Claimant's Compensation Amendment that was identified as Amendment 3 on the ballot.  The amendment is set forth below:

### The Florida Constitution

Article I, Section 26 is created to read "Claimant's right to fair compensation."  In any medical liability claim involving a contingency fee, the claimant is entitled to receive no less than 70% of the first $250,000 in all damages received by the claimant, exclusive of reasonable and customary costs, whether received by judgment, settlement or otherwise, and regardless of the number of defendants.  The claimant is entitled to 90% of all damages in excess of $250,000, exclusive of reasonable and customary costs and regardless of the number of defendants.  This provision is self-executing and does not require implementing legislation.

The undersigned client understands and acknowledges that (initial each provision):

_____I have been advised that signing this waiver releases an important constitutional right; and

_____I have been advised that I may consult with separate counsel before signing this waiver; and that I may request a hearing before a judge to further explain this waiver; and

_____By signing this waiver I agree to an increase in the attorney fee that might otherwise be owed if the constitutional provision listed above is not waived.  Without prior court approval, the increased fee that I agree to may be up to the

maximum contingency fee percentages set forth in Rule Regulating The Florida Bar 4-1.5(f)(4)(B)(i). Depending on the circumstances of my case, the maximum agreed upon fee may range from 33 1/3% to 40% of any recovery up to $1 million; plus 20% to 30% of any portion of the recovery between $1 million and $2 million; plus 15% to 20% of any recovery exceeding $2 million; and

_____I have three (3) business days following execution of this waiver in which to cancel this waiver; and

_____I wish to engage the legal services of the lawyers or law firms listed below in an action or claim for medical liability the fee for which is contingent in whole or in part upon the successful prosecution or settlement thereof, but I am unable to do so because of the provisions of the constitutional limitation set forth above. In consideration of the lawyers' or law firms' agreements to represent me and my desire to employ the lawyers or law firms listed below, I hereby knowingly, willingly, and voluntarily waive any and all rights and privileges that I may have under the constitutional provision set forth above, as apply to the contingency fee agreement only. Specifically, I waive the percentage restrictions that are the subject of the constitutional provision and confirm the fee percentages set forth in the contingency fee agreement; and

_____I have selected the lawyers or law firms listed below as my counsel of choice in this matter and would not be able to engage their services without this waiver; and I expressly state that this waiver is made freely and voluntarily, with full knowledge of its terms, and that all questions have been answered to my satisfaction.

## ACKNOWLEDGMENT BY CLIENT FOR PRESENTATION TO THE COURT

The undersigned client hereby acknowledges, under oath, the following:

I have read and understand this entire waiver of my rights under the constitutional provision set forth above.

I am not under the influence of any substance, drug, or condition (physical, mental, or emotional) that interferes with my understanding of this entire waiver in which I am entering and all the consequences thereof.

I have entered into and signed this waiver freely and voluntarily.

I authorize my lawyers or law firms listed below to present this waiver to the appropriate court, if required for purposes of approval of the contingency fee agreement. Unless the court requires my attendance at a hearing for that purpose, my lawyers or law firms are authorized to provide this waiver to the court for its consideration without my presence.

Dated this _____ day of _____, \_\_\_\_.

By: _____

CLIENT

Sworn to and subscribed before me this \_\_\_\_\_ day of _____, \_\_\_\_\_ by _____, who is personally known to me, or has produced the following identification: _____.

_____

Notary Public

My Commission Expires:

Dated this _____ day of _____, \_\_\_\_.

By: _____

ATTORNEY

(C) Before a lawyer enters into a contingent fee contract for representation of a client in a matter set forth in this rule, the lawyer shallmust provide the client with a copy of the statement of client's rights and shallmust afford the client a full and complete opportunity to understand each of the rights as set forth thereinin it. A copy of the statement, signed by both the client and the lawyer, shallmust be given to the client to retain and the lawyer shallmust keep a copy in the client's file. The statement shallmust be retained by the lawyer with the written fee contract and closing statement under the same conditions and requirements as subdivision (f)(5).

(D) As to lawyers not in the same firm, a division of any fee within subdivision (f)(4) shallmust be on the following basis:

(i) To the lawyer assuming primary responsibility for the legal services on behalf of the client, a minimum of 75% of the total fee.

(ii)  To the lawyer assuming secondary responsibility for the legal services on behalf of the client, a maximum of 25% of the total fee. Any fee in excess of 25% ~~shall~~will be presumed to be clearly excessive.

(iii)  The 25% limitation ~~shall~~will not apply to those cases in which 2 or more lawyers or firms accept substantially equal active participation in the providing of legal services.  In ~~such~~those circumstances counsel ~~shall~~must apply to the court in which the matter would be filed, if litigation is necessary, or if such court will not accept jurisdiction for the fee division, the circuit court ~~wherein~~in which the cause of action arose, for authorization of the fee division in excess of 25%, based ~~up~~on a sworn petition signed by all counsel that ~~shall~~ disclose_s_ in detail those services to be performed.  The application for authorization of ~~such a~~the contract may be filed as a separate proceeding before suit or simultaneously with the filing of a complaint, or within 10 days of execution of a contract for division of fees when new counsel is engaged.  Proceedings ~~thereon~~on these applications may occur before service of process on any party and this aspect of the file may be sealed.  Authorization of ~~such~~the contract ~~shall~~will not bar subsequent inquiry as to whether the fee actually claimed or charged is clearly excessive.  An application under this subdivision ~~shall~~must contain a certificate showing service on the client and, if the application is denied, a copy of the petition and order denying the petition ~~shall~~must be served on The Florida Bar in Tallahassee by the member of the bar who filed the petition.  Counsel may proceed with representation of the client pending court approval.

(iv)  The percentages required by this subdivision ~~shall be~~are applicable after deduction of any fee payable to separate counsel retained especially for appellate purposes.

(5)  In the event there is a recovery, ~~up~~on the conclusion of the representation, the lawyer ~~shall~~must prepare a closing statement reflecting an itemization of all costs and expenses, together with the amount of fee received by each participating lawyer or law firm.  A copy of the closing statement ~~shall~~must be executed by all participating lawyers, as well as the client, and each ~~shall~~must receive a copy. Each participating lawyer ~~shall~~must retain a copy of the written fee contract and closing statement for 6 years after execution of the closing statement.  Any contingent fee contract and closing statement ~~shall~~must be available for inspection at reasonable times by the

client, by any other person upon judicial order, or by the appropriate disciplinary agency.

(6) In cases in which the client is to receive a recovery that will be paid to the client on a future structured or periodic basis, the contingent fee percentage ~~shall~~must be calculated only on the cost of the structured verdict or settlement or, if the cost is unknown, on the present money value of the structured verdict or settlement, whichever is less. If the damages and the fee are to be paid out over the long term future schedule, this limitation does not apply. No attorney may negotiate separately with the defendant for that attorney's fee in a structured verdict or settlement when separate negotiations would place the attorney in a position of conflict.

**(g) Division of Fees Between Lawyers in Different Firms.** Subject to the provisions of subdivision (f)(4)(D), a division of fee between lawyers who are not in the same firm may be made only if the total fee is reasonable and:

(1) the division is in proportion to the services performed by each lawyer; or

(2) by written agreement with the client:

(A) each lawyer assumes joint legal responsibility for the representation and agrees to be available for consultation with the client; and

(B) the agreement fully discloses that a division of fees will be made and the basis upon which the division of fees will be made.

**(h) Credit Plans.** A lawyer or law firm may accept payment under a credit plan. ~~No higher fee shall be charged and no additional charge shall be imposed by reason of a lawyer's or law firm's participation in a credit plan.~~Lawyers may charge clients the actual charge the credit plan imposes on the lawyer for the client's transaction.

**(i) Arbitration Clauses.** A lawyer ~~shall~~must not make an agreement with a potential client prospectively providing for mandatory arbitration of fee disputes without first advising that person in writing that the potential client should consider obtaining independent legal advice as to the advisability of entering into an agreement containing such mandatory arbitration provisions. A lawyer shall not make an agreement containing such mandatory arbitration provisions unless the agreement contains the following language in bold print:

NOTICE: This agreement contains provisions requiring arbitration of fee disputes. Before you sign this agreement you should consider consulting with another lawyer about the advisability of making an agreement with mandatory arbitration requirements. Arbitration proceedings are ways to resolve disputes without use of the court system. By entering into agreements that require arbitration as the way to resolve fee disputes, you give up (waive) your right to go to court to resolve those disputes by a judge or jury. These are important rights that should not be given up without careful consideration.

## STATEMENT OF CLIENT'S RIGHTS
## FOR CONTINGENCY FEES

Before you, the prospective client, arrange a contingent fee agreement with a lawyer, you should understand this statement of your rights as a client. This statement is not a part of the actual contract between you and your lawyer, but, as a prospective client, you should be aware of these rights:

1. There is no legal requirement that a lawyer charge a client a set fee or a percentage of money recovered in a case. You, the client, have the right to talk with your lawyer about the proposed fee and to bargain about the rate or percentage as in any other contract. If you do not reach an agreement with 1 lawyer you may talk with other lawyers.

2. Any contingent fee contract must be in writing and you have 3 business days to reconsider the contract. You may cancel the contract without any reason if you notify your lawyer in writing within 3 business days of signing the contract. If you withdraw from the contract within the first 3 business days, you do not owe the lawyer a fee although you may be responsible for the lawyer's actual costs during that time. If your lawyer begins to represent you, your lawyer may not withdraw from the case without giving you notice, delivering necessary papers to you, and allowing you time to employ another lawyer. Often, your lawyer must obtain court approval before withdrawing from a case. If you discharge your lawyer without good cause after the 3-day period, you may have to pay a fee for work the lawyer has done.

3. Before hiring a lawyer, you, the client, have the right to know about the lawyer's education, training, and experience. If you ask, the lawyer should tell you specifically about the lawyer's actual experience dealing with cases similar to

yours.  If you ask, the lawyer should provide information about special training or knowledge and give you this information in writing if you request it.

4.  Before signing a contingent fee contract with you, a lawyer must advise you whether the lawyer intends to handle your case alone or whether other lawyers will be helping with the case.  If your lawyer intends to refer the case to other lawyers, the lawyer should tell you what kind of fee sharing arrangement will be made with the other lawyers.  If lawyers from different law firms will represent you, at least 1 lawyer from each law firm must sign the contingent fee contract.

5.  If your lawyer intends to refer your case to another lawyer or counsel with other lawyers, your lawyer should tell you about that at the beginning.  If your lawyer takes the case and later decides to refer it to another lawyer or to associate with other lawyers, you should sign a new contract that includes the new lawyers.  You, the client, also have the right to consult with each lawyer working on your case and each lawyer is legally responsible to represent your interests and is legally responsible for the acts of the other lawyers involved in the case.

6.  You, the client, have the right to know in advance how you will need to pay the expenses and the legal fees at the end of the case.  If you pay a deposit in advance for costs, you may ask reasonable questions about how the money will be or has been spent and how much of it remains unspent.  Your lawyer should give a reasonable estimate about future necessary costs.  If your lawyer agrees to lend or advance you money to prepare or research the case, you have the right to know periodically how much money your lawyer has spent on your behalf.  You also have the right to decide, after consulting with your lawyer, how much money is to be spent to prepare a case.  If you pay the expenses, you have the right to decide how much to spend.  Your lawyer should also inform you whether the fee will be based on the gross amount recovered or on the amount recovered minus the costs.

7.  You, the client, have the right to be told by your lawyer about possible adverse consequences if you lose the case.  Those adverse consequences might include money that you might have to pay to your lawyer for costs and liability you might have for attorney's fees, costs, and expenses to the other side.

8.  You, the client, have the right to receive and approve a closing statement at the end of the case before you pay any money.  The statement must list all of the financial details of the entire case, including the amount recovered, all expenses, and a precise statement of your lawyer's fee.  Until you approve the closing statement your lawyer cannot pay any money to anyone, including you, without an

appropriate order of the court. You also have the right to have every lawyer or law firm working on your case sign this closing statement.

9. You, the client, have the right to ask your lawyer at reasonable intervals how the case is progressing and to have these questions answered to the best of your lawyer's ability.

10. You, the client, have the right to make the final decision regarding settlement of a case. Your lawyer must notify you of all offers of settlement before and after the trial. Offers during the trial must be immediately communicated and you should consult with your lawyer regarding whether to accept a settlement. However, you must make the final decision to accept or reject a settlement.

11. If at any time you, the client, believe that your lawyer has charged an excessive or illegal fee, you have the right to report the matter to The Florida Bar, the agency that oversees the practice and behavior of all lawyers in Florida. For information on how to reach The Florida Bar, call 850/561-5600, or contact the local bar association. Any disagreement between you and your lawyer about a fee can be taken to court and you may wish to hire another lawyer to help you resolve this disagreement. Usually fee disputes must be handled in a separate lawsuit, unless your fee contract provides for arbitration. You can request, but may not require, that a provision for arbitration (under Chapter 682, Florida Statutes, or under the fee arbitration rule of the Rules Regulating The Florida Bar) be included in your fee contract.

_____          _____
Client Signature                                              Attorney Signature

_____          _____
Date                                                                  Date

**Comment**

**Bases or rate of fees and costs**

When the lawyer has regularly represented a client, they ordinarily will have evolved an understanding concerning the basis or rate of the fee. The conduct of the lawyer and client in prior relationships is relevant when analyzing the requirements of this rule. In a new client-lawyer relationship, however, an understanding as to the fee should be promptly established. It is not necessary to

recite all the factors that underlie the basis of the fee but only those that are directly involved in its computation. It is sufficient, for example, to state the basic rate is an hourly charge or a fixed amount or an estimated amount, or to identify the factors that may be taken into account in finally fixing the fee. Although hourly billing or a fixed fee may be the most common bases for computing fees in an area of practice, these may not be the only bases for computing fees. A lawyer should, where appropriate, discuss alternative billing methods with the client. When developments occur during the representation that render an earlier estimate substantially inaccurate, a revised estimate should be provided to the client. A written statement concerning the fee reduces the possibility of misunderstanding. Furnishing the client with a simple memorandum or a copy of the lawyer's customary fee schedule is sufficient if the basis or rate of the fee is set forth.

General overhead should be accounted for in a lawyer's fee, whether the lawyer charges hourly, flat, or contingent fees. Filing fees, transcription, and the like should be charged to the client at the actual amount paid by the lawyer. A lawyer may agree with the client to charge a reasonable amount for in-house costs or services. In-house costs include items such as copying, faxing, long distance telephone, and computerized research. In-house services include paralegal services, investigative services, accounting services, and courier services. The lawyer should sufficiently communicate with the client regarding the costs charged to the client so that the client understands the amount of costs being charged or the method for calculation of those costs. Costs appearing in sufficient detail on closing statements and approved by the parties to the transaction should meet the requirements of this rule.

Rule 4-1.8(e) should be consulted regarding a lawyer's providing financial assistance to a client in connection with litigation.

Lawyers should also be mindful of any statutory, constitutional, or other requirements or restrictions on attorneys' fees.

In order to avoid misunderstandings concerning the nature of legal fees, written documentation is required when any aspect of the fee is nonrefundable. A written contract provides a method to resolve misunderstandings and to protect the lawyer in the event of continued misunderstanding. Rule 4-1.5-(e) does not require the client to sign a written document memorializing the terms of the fee. A letter from the lawyer to the client setting forth the basis or rate of the fee and the intent of the parties in regard to the nonrefundable nature of the fee is sufficient to meet the requirements of this rule.

All legal fees and contracts for legal fees are subject to the requirements of the Rules Regulating The Florida Bar. In particular, the test for reasonableness of legal fees found in rule 4-1.5(b) applies to all types of legal fees and contracts related to them.

**Terms of payment**

A lawyer may require advance payment of a fee but is obliged to return any unearned portion. See rule 4-1.16(d). A lawyer is not, however, required to return retainers that, pursuant to an agreement with a client, are not refundable. A nonrefundable retainer or nonrefundable flat fee is the property of the lawyer and should not be held in trust. If a client gives the lawyer a negotiable instrument that represents both an advance on costs plus either a nonrefundable retainer or a nonrefundable flat fee, the entire amount should be deposited into the lawyer's trust account, then the portion representing the earned nonrefundable retainer or nonrefundable flat fee should be withdrawn within a reasonable time. An advance fee must be held in trust until it is earned. Nonrefundable fees are, as all fees, subject to the prohibition against excessive fees.

A lawyer may accept property in payment for services, such as an ownership interest in an enterprise, providing this does not involve acquisition of a proprietary interest in the cause of action or subject matter of the litigation contrary to rule 4-1.8(i). However, a fee paid in property instead of money may be subject to special scrutiny because it involves questions concerning both the value of the services and the lawyer's special knowledge of the value of the property.

An agreement may not be made whose terms might induce the lawyer improperly to curtail services for the client or perform them in a way contrary to the client's interest. For example, a lawyer should not enter into an agreement whereby services are to be provided only up to a stated amount when it is foreseeable that more extensive services probably will be required, unless the situation is adequately explained to the client. Otherwise, the client might have to bargain for further assistance in the midst of a proceeding or transaction. However, it is proper to define the extent of services in light of the client's ability to pay. A lawyer should not exploit a fee arrangement based primarily on hourly charges by using wasteful procedures. When there is doubt whether a contingent fee is consistent with the client's best interest, the lawyer should offer the client alternative bases for the fee and explain their implications. Applicable law may impose limitations on contingent fees, such as a ceiling on the percentage.

**Prohibited contingent fees**

Subdivision (f)(3)(A) prohibits a lawyer from charging a contingent fee in a domestic relations matter when payment is contingent ~~upon~~ the securing of a divorce or ~~up~~on the amount of alimony or support or property settlement to be obtained. This provision does not preclude a contract for a contingent fee for legal representation in connection with the recovery of post-judgment balances due under support, alimony, or other financial orders because such contracts do not implicate the same policy concerns.

Contingent fees are prohibited in criminal and certain domestic relations matters. In domestic relations cases, fees that include a bonus provision or additional fee to be determined at a later time and based on results obtained have been held to be impermissible contingency fees and therefore subject to restitution and disciplinary sanction as elsewhere stated in these Rules Regulating The Florida Bar.

**Contingent fee regulation**

Subdivision (e) is intended to clarify that whether the lawyer's fee contract complies with these rules is a matter between the lawyer and client and an issue for professional disciplinary enforcement. The rules and subdivision (e) are not intended to be used as procedural weapons or defenses by others. Allowing opposing parties to assert noncompliance with these rules as a defense, including whether the fee is fixed or contingent, allows for potential inequity if the opposing party is allowed to escape responsibility for their actions solely through application of these rules.

Rule 4-1.5(f)(4) should not be construed to apply to actions or claims seeking property or other damages arising in the commercial litigation context.

Rule 4-1.5(f)(4)(B) is intended to apply only to contingent aspects of fee agreements. In the situation where a lawyer and client enter a contract for part noncontingent and part contingent attorney's fees, rule 4-1.5(f)(4)(B) should not be construed to apply to and prohibit or limit the noncontingent portion of the fee agreement. An attorney could properly charge and retain the noncontingent portion of the fee even if the matter was not successfully prosecuted or if the noncontingent portion of the fee exceeded the schedule set forth in rule 4-1.5(f)(4)(B). Rule 4-1.5(f)(4)(B) should, however, be construed to apply to any additional contingent portion of such a contract when considered together with earned noncontingent fees. Thus, under such a contract a lawyer may demand or

collect only such additional contingent fees as would not cause the total fees to exceed the schedule set forth in rule 4-1.5(f)(4)(B).

The limitations in rule 4-1.5(f)(4)(B)(i)c are only to be applied in the case where all the defendants admit liability at the time they file their initial answer and the trial is only on the issue of the amount or extent of the loss or the extent of injury suffered by the client.  If the trial involves not only the issue of damages but also such questions as proximate cause, affirmative defenses, seat belt defense, or other similar matters, the limitations are not to be applied because of the contingent nature of the case being left for resolution by the trier of fact.

Rule 4-1.5(f)(4)(B)(ii) provides the limitations set forth in subdivision (f)(4)(B)(i) may be waived by the client ~~up~~on approval by the appropriate judge.  This waiver provision may not be used to authorize a lawyer to charge a client a fee that would exceed rule 4-1.5(a) or (b).  It is contemplated that this waiver provision will not be necessary except where the client wants to retain a particular lawyer to represent the client or the case involves complex, difficult, or novel questions of law or fact that would justify a contingent fee greater than the schedule but not a contingent fee that would exceed rule 4-1.5(b).

~~Upon~~On a petition by a client, the trial court reviewing the waiver request must grant that request if the trial court finds the client:  (a) understands the right to have the limitations in rule 4-1.5(f)(4)(B) applied in the specific matter; and (b) understands and approves the terms of the proposed contract.  The consideration by the trial court of the waiver petition is not to be used as an opportunity for the court to inquire into the merits or details of the particular action or claim that is the subject of the contract.

The proceedings before the trial court and the trial court's decision on a waiver request are to be confidential and not subject to discovery by any of the parties to the action or by any other individual or entity except The Florida Bar.  However, terms of the contract approved by the trial court may be subject to discovery if the contract (without court approval) was subject to discovery under applicable case law or rules of evidence.

Rule 4-1.5(f)(4)(B)(iii) is added to acknowledge the provisions of Article 1, Section 26 of the Florida Constitution, and to create an affirmative obligation on the part of an attorney contemplating a contingency fee contract to notify a potential client with a medical liability claim of the limitations provided in that constitutional provision.  This addition to the rule is adopted prior to any judicial interpretation of the meaning or scope of the constitutional provision and this rule

is not intended to make any substantive interpretation of the meaning or scope of that provision.  The rule also provides that a client who wishes to waive the rights of the constitutional provision, as those rights may relate to attorney's fees, must do so in the form contained in the rule.

Rule 4-1.5(f)(6) prohibits a lawyer from charging the contingent fee percentage on the total, future value of a recovery being paid on a structured or periodic basis.  This prohibition does not apply if the lawyer's fee is being paid over the same length of time as the schedule of payments to the client.

Fees that provide for a bonus or additional fees and that otherwise are not prohibited under the Rules Regulating The Florida Bar can be effective tools for structuring fees.  For example, a fee contract calling for a flat fee and the payment of a bonus based on the amount of property retained or recovered in a general civil action is not prohibited by these rules.  However, the bonus or additional fee must be stated clearly in amount or formula for calculation of the fee (basis or rate).  Courts have held that unilateral bonus fees are unenforceable.  The test of reasonableness and other requirements of this rule apply to permissible bonus fees.

**Division of fee**

A division of fee is a single billing to a client covering the fee of 2 or more lawyers who are not in the same firm.  A division of fee facilitates association of more than 1 lawyer in a matter in which neither alone could serve the client as well, and most often is used when the fee is contingent and the division is between a referring lawyer and a trial specialist.  Subject to the provisions of subdivision (f)(4)(D), subdivision (g) permits the lawyers to divide a fee on either the basis of the proportion of services they render or by agreement between the participating lawyers if all assume responsibility for the representation as a whole and the client is advised and does not object.  It does require disclosure to the client of the share that each lawyer is to receive.  Joint responsibility for the representation entails the obligations stated in rule 4-5.1 for purposes of the matter involved.

**Disputes over fees**

Since the fee arbitration rule (chapter 14) has been established by the bar to provide a procedure for resolution of fee disputes, the lawyer should conscientiously consider submitting to it.  Where law prescribes a procedure for determining a lawyer's fee, for example, in representation of an executor or administrator, a class, or a person entitled to a reasonable fee as part of the measure

of damages, the lawyer entitled to such a fee and a lawyer representing another party concerned with the fee should comply with the prescribed procedure.

**Referral fees and practices**

A secondary lawyer ~~shall~~is not ~~be~~ entitled to a fee greater than the limitation set forth in rule 4-1.5(f)(4)(D)(ii) merely because the lawyer agrees to do some or all of the following: (a) consults with the client; (b) answers interrogatories; (c) attends depositions; (d) reviews pleadings; (e) attends the trial; or (f) assumes joint legal responsibility to the client. However, the provisions do not contemplate that a secondary lawyer who does more than the above is necessarily entitled to a larger percentage of the fee than that allowed by the limitation.

The provisions of rule 4-1.5(f)(4)(D)(iii) only apply where the participating lawyers have for purposes of the specific case established a co-counsel relationship. The need for court approval of a referral fee arrangement under rule 4-1.5(f)(4)(D)(iii) should only occur in a small percentage of cases arising under rule 4-1.5(f)(4) and usually occurs prior to the commencement of litigation or at the onset of the representation. However, in those cases in which litigation has been commenced or the representation has already begun, approval of the fee division should be sought within a reasonable period of time after the need for court approval of the fee division arises.

In determining if a co-counsel relationship exists, the court should look to see if the lawyers have established a special partnership agreement for the purpose of the specific case or matter. If such an agreement does exist, it must provide for a sharing of services or responsibility and the fee division is based upon a division of the services to be rendered or the responsibility assumed. It is contemplated that a co-counsel situation would exist where a division of responsibility is based ~~up~~on, but not limited to, the following: (a) based upon geographic considerations, the lawyers agree to divide the legal work, responsibility, and representation in a convenient fashion~~.~~ ~~Such~~(such a situation would occur when different aspects of a case must be handled in different locations); (b) where the lawyers agree to divide the legal work and representation based ~~up~~on their particular expertise in the substantive areas of law involved in the litigation; or (c) where the lawyers agree to divide the legal work and representation along established lines of division, such as liability and damages, causation and damages, or other similar factors.

The trial court's responsibility when reviewing an application for authorization of a fee division under rule 4-1.5(f)(4)(D)(iii) is to determine if a co-counsel relationship exists in that particular case. If the court determines a co-counsel

relationship exists and authorizes the fee division requested, the court does not have any responsibility to review or approve the specific amount of the fee division agreed upon by the lawyers and the client.

Rule 4-1.5(f)(4)(D)(iv) applies to the situation where appellate counsel is retained during the trial of the case to assist with the appeal of the case. The percentages set forth in subdivision (f)(4)(D) are to be applicable after appellate counsel's fee is established. However, the effect should not be to impose an unreasonable fee on the client.

**Credit plans**

Credit plans include credit cards. ~~If a lawyer accepts payment from a credit plan for an advance of fees and costs, the amount must be held in trust in accordance with chapter 5, Rules Regulating The Florida Bar, and the lawyer must add the lawyer's own money to the trust account in an amount equal to the amount charged by the credit plan for doing business with the credit plan.~~

## RULE 4-1.10  IMPUTATION OF CONFLICTS OF INTEREST; GENERAL RULE

**(a)  Imputed Disqualification of All Lawyers in Firm.** While lawyers are associated in a firm, none of them may knowingly represent a client when any 1 of them practicing alone would be prohibited from doing so by rule 4-1.7 or 4-1.9 except as provided elsewhere in this rule, or unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

**(b)  Former Clients of Newly Associated Lawyer.** When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) and (c) that is material to the matter.

**(c)  Representing Interests Adverse to Clients of Formerly Associated Lawyer.** When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:

(1)  the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and

(2)  any lawyer remaining in the firm has information protected by rules 4-1.6 and 4-1.9(b) and (c) that is material to the matter.

**(d)  Waiver of Conflict.**  A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in rule 4-1.7.

**(e)  Government Lawyers.**  The disqualification of lawyers associated in a firm with former or current government lawyers is governed by rule 4-1.11.

## Comment

### Definition of "firm"

~~With respect to the law department of an organization, there~~There is ordinarily no question that the members of ~~the~~an organization's law department constitute a firm within the meaning of the Rules of Professional Conduct.  However, there can be uncertainty as to the identity of the client.  For example, it may not be clear whether the law department of a corporation represents a subsidiary or an affiliated corporation, as well as the corporation by which the members of the department are directly employed.  A similar question can arise concerning an unincorporated association and its local affiliates.

Similar questions can also arise with respect to lawyers in legal aid.  Lawyers employed in the same unit of a legal service organization constitute a firm, but not necessarily those employed in separate units.  As in the case of independent practitioners, whether the lawyers should be treated as associated with each other can depend on the particular rule that is involved and on the specific facts of the situation.

Where a lawyer has joined a private firm after having represented the government, the situation is governed by rule 4-1.11(a) and (b); where a lawyer represents the government after having served private clients, the situation is governed by rule 4-1.11(c)(1).  The individual lawyer involved is bound by the rules generally, including rules 4-1.6, 4-1.7, and 4-1.9.

Different provisions are thus made for movement of a lawyer from 1 private firm to another and for movement of a lawyer between a private firm and the government.  The government is entitled to protection of its client confidences and, therefore, to the protections provided in rules 4-1.6, 4-1.9, and 4-1.11.  However, if

the more extensive disqualification in rule 4-1.10 were applied to former government lawyers, the potential effect on the government would be unduly burdensome.  The government deals with all private citizens and organizations and thus has a much wider circle of adverse legal interests than does any private law firm.  In these circumstances, the government's recruitment of lawyers would be seriously impaired if rule 4-1.10 were applied to the government.  On balance, therefore, the government is better served in the long run by the protections stated in rule 4-1.11.

**Principles of imputed disqualification**

The rule of imputed disqualification stated in subdivision (a) gives effect to the principle of loyalty to the client as it applies to lawyers who practice in a law firm.  ~~Such~~These situations can be considered from the premise that a firm of lawyers is essentially 1 lawyer for purposes of the rules governing loyalty to the client or from the premise that each lawyer is vicariously bound by the obligation of loyalty owed by each lawyer with whom the lawyer is associated.  Subdivision (a) operates only among the lawyers currently associated in a firm.  When a lawyer moves from 1 firm to another the situation is governed by subdivisions (b) and (c).

The rule in subdivision (a) does not prohibit representation where neither questions of client loyalty nor protection of confidential information are presented.  Where 1 lawyer in a firm could not effectively represent a given client because of strong political beliefs, for example, but that lawyer will do no work on the case and the personal beliefs of the lawyer will not materially limit the representation by others in the firm, the firm should not be disqualified.  On the other hand, if an opposing party in a case were owned by a lawyer in the law firm, and others in the firm would be materially limited in pursuing the matter because of loyalty to that lawyer, the personal disqualification of the lawyer would be imputed to all others in the firm.

The rule in subdivision (a) also does not prohibit representation by others in the law firm where the person prohibited from involvement in a matter is a nonlawyer, such as a paralegal or legal secretary.  ~~Such~~These persons, however, ordinarily must be screened from any personal participation in the matter to avoid communication to others in the firm of confidential information that both the nonlawyers and the firm have a legal duty to protect.  See terminology and rule 4-5.3.

## Lawyers moving between firms

When lawyers have been associated in a firm but then end their association, however, the problem is more complicated. The fiction that the law firm is the same as a single lawyer is no longer wholly realistic. There are several competing considerations. First, the client previously represented must be reasonably assured that the principle of loyalty to the client is not compromised. Second, the rule of disqualification should not be so broadly cast as to preclude other persons from having reasonable choice of legal counsel. Third, the rule of disqualification should not unreasonably hamper lawyers from forming new associations and taking on new clients after having left a previous association. In this connection, it should be recognized that today many lawyers practice in firms, that many to some degree limit their practice to 1 field or another, and that many move from 1 association to another several times in their careers. If the concept of imputed disqualification were defined with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from 1 practice setting to another and of the opportunity of clients to change counsel.

Reconciliation of these competing principles in the past has been attempted under 2 rubrics. One approach has been to seek per se rules of disqualification. For example, it has been held that a partner in a law firm is conclusively presumed to have access to all confidences concerning all clients of the firm. Under this analysis, if a lawyer has been a partner in one law firm and then becomes a partner in another law firm, there is a presumption that all confidences known by a partner in the first firm are known to all partners in the second firm. This presumption might properly be applied in some circumstances, especially where the client has been extensively represented, but may be unrealistic where the client was represented only for limited purposes. Furthermore, such a rigid rule exaggerates the difference between a partner and an associate in modern law firms.

The other rubric formerly used for dealing with vicarious disqualification is the appearance of impropriety and was proscribed in former Canon 9 of the Code of Professional Responsibility. This rubric has a two-fold problem. First, the appearance of impropriety can be taken to include any new client-lawyer relationship that might make a former client feel anxious. If that meaning were adopted, disqualification would become little more than a question of subjective judgment by the former client. Second, since "impropriety" is undefined, the term "appearance of impropriety" is question-begging. It therefore has to be recognized that the problem of imputed disqualification cannot be properly resolved either by simple analogy to a lawyer practicing alone or by the very general concept of appearance of impropriety.

A rule based on a functional analysis is more appropriate for determining the question of vicarious disqualification. Two functions are involved: preserving confidentiality and avoiding positions adverse to a client.

**Confidentiality**

Preserving confidentiality is a question of access to information. Access to information, in turn, is essentially a question of fact in particular circumstances, aided by inferences, deductions, or working presumptions that reasonably may be made about the way in which lawyers work together. A lawyer may have general access to files of all clients of a law firm and may regularly participate in discussions of their affairs; it should be inferred that such a lawyer in fact is privy to all information about all the firm's clients. In contrast, another lawyer may have access to the files of only a limited number of clients and participate in discussion of the affairs of no other clients; in the absence of information to the contrary, it should be inferred that such a lawyer in fact is privy to information about the clients actually served but not information about other clients.

Application of subdivisions (b) and (c) depends on a situation's particular facts. In any ~~such~~ inquiry, the burden of proof should rest upon the firm whose disqualification is sought.

Subdivisions (b) and (c) operate to disqualify the firm only when the lawyer involved has actual knowledge of relevant information protected by rules 4-1.6 and 4-1.9(b) and (c). Thus, if a lawyer while with 1 firm acquired no knowledge or information relating to a particular client of the firm and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the 2 clients conflict.

Independent of the question of disqualification of a firm, a lawyer changing professional association has a continuing duty to preserve confidentiality of information about a client formerly represented. See rules 4-1.6 and 4-1.9.

**~~Adverse positions~~**

~~The second aspect of loyalty to client is the lawyer's obligation to decline subsequent representations involving positions adverse to a former client arising in substantially related matters. This obligation requires abstention from adverse representation by the individual lawyer involved, but does not properly entail abstention of other lawyers through imputed disqualification. Hence, this aspect of the problem is governed by rule 4-1.9(a). Thus, if a lawyer left 1 firm for another,~~

~~the new affiliation would not preclude the firms involved from continuing to represent clients with adverse interests in the same or related matters so long as the conditions of rule 4-1.10(b) and (c) concerning confidentiality have been met.~~

## Consent to conflict

Rule 4-1.10(d) removes imputation with the informed consent of the affected client or former client under the conditions stated in rule 4-1.7.  The conditions stated in rule 4-1.7 require the lawyer to determine that the representation is not prohibited by rule 4-1.7(b) and that each affected client or former client has given informed consent to the representation, confirmed in writing or clearly stated on the record.  In some cases, the risk may be so severe that the conflict may not be cured by client consent.  For a definition of informed consent, see terminology.

## Imputation of conflicts in rule 4-1.8

Where a lawyer is prohibited from engaging in certain transactions under rule 4-1.8, subdivision (k) of that rule, and not this rule, determines whether that prohibition also applies to other lawyers associated in a firm with the personally prohibited lawyer.

### RULE 4-1.19  COLLABORATIVE LAW PROCESS IN FAMILY LAW

(a)  **Duty to Explain Process to ~~Prospective~~ Client.** A lawyer must obtain the informed consent of a ~~prospective~~ client in a family law matter ~~to~~before proceeding in the collaborative law process after providing the ~~prospective~~ client with sufficient information about the collaborative law process, including, but not limited to, the following:

(1)  the <u>material</u> benefits and risks of <u>using</u> the collaborative law process to resolve a family law matter;

(2)  the nature and scope of the matter to be resolved through the collaborative law process;

~~(3)  the material benefits and risks of participating in the collaborative law process;~~

(4<u>3</u>)  alternatives to the collaborative law process;

(5<u>4</u>)  that participation in the collaborative law process is voluntary and any client may unilaterally terminate the collaborative law process for any reason;

(65)  that the collaborative law process will terminate if any participating client initiates a proceeding or seeks court intervention in a pending proceeding related to the collaborative law matter after the clients have signed the collaborative law agreement;

(76)  limitations on the lawyer's participation in subsequent proceedings imposed by family law court rules on the collaborative law process; and

(87)  fees and costs the client can reasonably expect to incur in the collaborative law process, including the fees of the lawyers, mental health professionals, and financial professionals.

**(b) Written Agreement Required.**  A lawyer is prohibited from representing a client in the collaborative process in a family law matter unless all participating lawyers and clients sign a written agreement that includes:

(1)  a statement of the clients' intent to resolve a matter through the collaborative law process under these rules;

(2)  a description of the nature and scope of the matter;

(3)  identification of the lawyers participating in the collaborative law process and which client(s) they represent;

(4)  that the clients will make timely, full, candid, and informal disclosure of information related to the collaborative matter without formal discovery and will promptly update previously disclosed information that has materially changed;

(5)  that participation in the collaborative law process is voluntary and any client may unilaterally terminate the collaborative law process for any reason;

(6)  that the collaborative law process will terminate if any participating client initiates a proceeding or seeks court intervention in a pending proceeding related to the collaborative law matter after the clients have signed the collaborative law agreement; and

(7)  that the clients understand that their lawyers may not represent the clients or any other person before a court in a proceeding related to the collaborative law matter except as provided by court rule.

**(c) Duty to Address Domestic Violence.**  A lawyer must reasonably inquire whether a prospective client has a history of any coercive or violent relationship

with another party in a family law matter before agreeing to represent a client in the collaborative law process and must make reasonable efforts to continue to assess whether a coercive or violent relationship exists between parties in a family law matter throughout the collaborative law process. A lawyer may not represent a client in the collaborative law process in a family law matter and must terminate the client-lawyer relationship in an existing collaborative law process in a family law matter if the lawyer reasonably believes that the lawyer's client has a history of any coercive or violent relationship with another party in the matter unless:

    (1) the client requests to begin or continue the collaborative law process; and

    (2) the lawyer reasonably believes that the safety of the client can be protected during the collaborative law process.

## Comment

The collaborative law process involves the nonadversarial resolution of disputes through voluntary settlement procedures. Florida statutes and court rules permit collaborative law to resolve disputes in family law. Lawyers engaging in the collaborative law process in family law matters must comply with legislative and court requirements regarding the process. As part of this nonadversarial and voluntary resolution of disputes, lawyers who engage in the collaborative law process in a family law matter, and any other lawyers in that lawyer's firm, may not afterwards represent any party in any related proceeding except to request that a court approve the settlement reached during the collaborative law process or in specified emergency situations in accordance with family law court rules.

Before agreeing with the client to proceed in the collaborative law process in a family law matter, a lawyer should first consider whether a ~~prospective~~ client is an appropriate candidate for the collaborative law process and must provide the ~~prospective~~ client with sufficient information regarding the benefits and risks of the process, including the lawyer's limitations regarding subsequent proceedings. See also rules 4-1.4 and 4-1.2. To determine whether a ~~prospective~~ client is a good candidate for the collaborative law process, the lawyer must inquire regarding any history of coercive or violent relationships with any other persons who would be parties to the collaborative law process in the family law matter. See also rules 4-1.1 and 4-1.2. The lawyer also must provide the ~~prospective~~ client with information about other reasonably available alternatives to resolve the family law matter, which may include litigation, mediation, arbitration, or expert evaluation. See also rule 4-1.4. The lawyer should assess whether the ~~prospective~~ client is

likely to cooperate in voluntary discovery and discuss that process with the ~~prospective~~ client.  See rules 4-1.1 and 4-1.2.  The lawyer should also advise the ~~prospective~~ client that the collaborative law process will terminate if any party initiates litigation or other court intervention in the matter after signing a collaborative law agreement.  ~~Id.~~*Id.*  The lawyer should discuss with the client the fact that the collaborative law process is voluntary and any party to a collaborative law agreement may terminate the process at any time.  ~~Id.~~*Id.*  The lawyer must provide the client with information about costs the client can reasonably expect to incur, including fees and costs of all professionals involved.  See rules 4-1.4 and 4-1.5.

An agreement between a lawyer and client to engage in the collaborative law process is a form of limited representation which must comply with all requirements of limited scope representations, including the requirement that the client must give informed consent in writing.  See rule 4-1.2(c).  The agreement between lawyer and client should include the nature and scope of the matter to be resolved through the collaborative law process, the material benefits and risks to participating in the collaborative law process, and the limitations on the lawyer's representation.

If a client agrees to participate in the collaborative law process and then terminates the process or initiates litigation regarding the dispute, the lawyer should terminate the representation.  See rule 4-1.16.

## 4-5 LAW FIRMS AND ASSOCIATIONS
## RULE 4-5.8  PROCEDURES FOR LAWYERS LEAVING LAW FIRMS AND DISSOLUTION OF LAW FIRMS

**(a)  Contractual Relationship Between Law Firm and Clients.**  The contract for legal services creates the legal relationships between the client and law firm and between the client and individual members of the law firm, including the ownership of the files maintained by the lawyer or law firm.  Nothing in these rules creates or defines those relationships.

**(b)  Client's Right to Counsel of Choice.**  Clients have the right to expect that they may choose counsel when legal services are required and, with few exceptions, nothing that lawyers and law firms do affects the exercise of that right.

**(c)  Contact With Clients.**

(1)  *Lawyers Leaving Law Firms.*  Absent a specific agreement otherwise, a lawyer who is leaving a law firm may not unilaterally contact those clients of

the law firm for purposes of notifying them about the anticipated departure or to solicit representation of the clients unless the lawyer has approached an authorized representative of the law firm and attempted to negotiate a joint communication to the clients concerning the lawyer leaving the law firm and bona fide negotiations have been unsuccessful.

(2) *Dissolution of Law Firm.* Absent a specific agreement otherwise, a lawyer involved in the dissolution of a law firm may not unilaterally contact clients of the law firm unless, after bona fide negotiations, authorized members of the law firm have been unable to agree on a method to provide notice to clients.

**(d) Form for Contact With Clients.**

(1) *Lawyers Leaving Law Firms.* When a joint response has not been successfully negotiated, unilateral contact by individual members or the law firm must give notice to clients that the lawyer is leaving the law firm and provide options to the clients to choose to remain a client of the law firm, to choose representation by the departing lawyer, or to choose representation by other lawyers or law firms.

(2) *Dissolution of Law Firms.* When a law firm is being dissolved and no procedure for contacting clients has been agreed to, unilateral contact by members of the law firm must give notice to clients that the firm is being dissolved and provide options to the clients to choose representation by any member of the dissolving law firm, or representation by other lawyers or law firms.

(3) *Liability for Fees and Costs.* In all instances, notice to the client required under this rule must provide information concerning potential liability for fees for legal services previously rendered, costs expended, and how any deposits for fees or costs will be handled. In addition, if appropriate, notice must be given that reasonable charges may be imposed to provide a copy of any file to a successor lawyer.

**(e) Nonresponsive Clients.**

(1) *Lawyers Leaving Law Firms.* In the event a client fails to advise the lawyers and law firm of the client's intention in regard to who is to provide future legal services when a lawyer is leaving the firm, the client remains a client of the firm until the client advises otherwise.

(2)  *Dissolution of Law Firms.*  In the event a client fails to advise the lawyers of the client's intention in regard to who is to provide future legal services when a law firm is dissolving, the client remains a client of the lawyer who primarily provided the prior legal services on behalf of the firm until the client advises otherwise.

**Comment**

The current rule of law regarding ownership of client files is discussed in *Donahue v. Vaughn*, 721 So. 2d 356 (Fla. 5th DCA 1998), and *Dowda & Fields, P.A. v. Cobb*, 452 So. 2d 1140 (Fla. 5th DCA 1984).  A lawyer leaving a law firm, when the law firm remains available to continue legal representation, has no right nor expectation to take client files without an agreement with the law firm to do so.

While clients have the right to choose counsel, that choice may implicate obligations such as a requirement to pay for legal services previously rendered and costs expended in connection with the representation as well as a reasonable fee for copying the client's file.

Whether individual members have any individual legal obligations to a client is a matter of contract law, tort law, or court rules that is outside the scope of rules governing lawyer conduct.  Generally, individual lawyers have such obligations only if provided for in the contract for representation.  Nothing in this rule or in the contract for representation may alter the ethical obligations that individual lawyers have to clients as provided elsewhere in these rules.

In most instances a lawyer leaving a law firm and the law firm should engage in bona fide, good faith negotiations and craft a joint communication providing adequate information to the client so that the client may make a fully informed decision concerning future representation.  In those instances in which bona fide negotiations are unsuccessful, unilateral communication may be made by the departing lawyer or the law firm.  In those circumstances, great care should be taken to meet the obligation of adequate communication and for this reason the specific requirements of subdivisions (d)(1) and (3) are provided.

Lawyers and firms should engage in bona fide, good faith negotiations within a reasonable period of time following their knowledge of either the anticipated change in firm composition or, if the anticipated change is unknown, within a reasonable period of time after the change in firm composition.  The actual notification to clients should also occur within a reasonable period of time.  What is reasonable will depend on the circumstances, including the nature of the matters

in which the lawyer represented the clients and whether the affected clients have deadlines that need to be met within a short period of time.

For purposes of this rule, clients who should be notified of the change in firm composition include current clients for whom the departing lawyer has provided significant legal services with direct client contact. Clients need not be notified of the departure of a lawyer with whom the client has had no direct contact. Clients whose files are closed need not be notified unless the former client contacts the firm, at which point the firm should notify the former client of the departure of any lawyer who performed significant legal services for that former client and had direct contact with that former client.

Although contact by telephone is not prohibited under this rule, proof of compliance with the requirements of this rule may be difficult unless the notification is in writing.

In order to comply with the requirements of this rule, both departing lawyers and the law firm should be given access to the names and contact information of all clients for whom the departing lawyer has provided significant legal services and with whom the lawyer has had direct contact.

If neither the departing lawyer nor the law firm intends to continue representation of the affected clients, they may either agree on a joint letter providing that information to those clients, or may separately notify the affected clients after bona fide, good faith negotiations have failed. Any obligation to give the client reasonable notice, protect the client's interests on withdrawal, and seek permission of a court to withdraw may apply to both the departing lawyer and lawyers remaining in the firm.

Most law firms have some written instrument creating the law firm and specifying procedures to be employed upon dissolution of the firm. However, when such an instrument does not exist or does not adequately provide for procedures in the event of dissolution, the provisions of this rule are provided so that dissolution of the law firm does not disproportionately affect client rights.

As in instances of a lawyer departing a law firm, lawyers involved in the dissolution of law firms have a continuing obligation to provide adequate information to a client so that the client may make informed decisions concerning future representation.

The Florida Bar~~'s Practice Resource Institute~~ has sample forms for notice to clients and sample partnership and other contracts that are available to members.

The forms may be accessed on the bar's website, *www.flabar.org*www.floridabar.org, or by calling The Florida Bar headquarters in Tallahassee.

Lawyers involved in either a change in law firm composition or law firm dissolution may have duties to notify the court if the representation is in litigation. If the remaining law firm will continue the representation of the client, no notification of the change in firm composition to the court may be required, but such a notification may be advisable. If the departing lawyer will take over representation of the client, a motion for substitution of counsel or a motion by the firm to withdraw from the representation may be appropriate. If the departing lawyer and the law firm have made the appropriate request for the client to select either the departing lawyer or the law firm to continue the representation, but the client has not yet responded, the law firm should consider notifying the court of the change in firm composition, although under ordinary circumstances, absent an agreement to the contrary, the firm will continue the representation in the interim. If the departing lawyer and the law firm have agreed regarding who will continue handling the client's matters then, absent disagreement by the client, the agreement normally will determine whether the departing lawyer or the law firm will continue the representation.

## 4-6 PUBLIC SERVICE
## RULE 4-6.5  VOLUNTARY PRO BONO PLAN

(a) **Purpose.** The purpose of the voluntary pro bono attorneylawyer plan is to increase the availability of legal service to the poor. The following operating plan has as its goal the improvement of the availability of legal services to the poor and the expansion of present and expand pro bono legal service programs. The following operating plan was implemented to accomplish this purpose and goal.

(b) **Standing Committee on Pro Bono Legal Service.** The president-elect of The Florida Bar is responsible for appointing aappoints the standing committee on pro bono legal service to the poor.

(1) *Composition of the Standing Committee.* The standing committee consists of no more than 25 members and includes, but is not limited to:

(A) 5 past or current members of the board of governors of The Florida Bar, 1 of whom is the chair or a member of the access to the legal system committee of the board of governors;

(B) 5 past or current directors of The Florida Bar Foundation;

(C)  1 trial judge and 1 appellate judge;

(D)  2 representatives of civil legal assistance providers;

(E)  2 representatives from local and statewide voluntary bar associations;

(F)  2 public members, 1 of whom is a representative of the poor;

(G)  the president or designee of the Board of Directors of Florida Legal Services, Inc.;

(H)  1 representative of the Out-of-State ~~division~~Division of The Florida Bar; and

(I)   the president or designee of the Young Lawyers Division of The Florida Bar.

(2)  *Responsibilities of the Standing Committee.*  The standing committee will:

(A)  identify, encourage, support, and assist statewide and local pro bono projects and activities;

(B)  receive reports from circuit committees submitted on standardized forms developed by the standing committee;

(C)  review and evaluate circuit court pro bono plans;

(D)  ~~beginning in the first year in which individual attorney pro bono reports are due,~~ submit an annual report ~~as to~~on the activities and results of the pro bono plan to the board of governors of The Florida Bar, ~~The~~the Florida Bar Foundation, and ~~to~~ the Supreme Court of Florida;

(E)  present to the board of governors of The Florida Bar and to the Supreme Court of Florida any suggested changes or modifications to the pro bono rules.

**(c)  Circuit Pro Bono Committees.**  ~~There will be 1 circuit pro bono committee in each of the judicial circuits of Florida.  In each judicial circuit the~~The chief judge of ~~the~~each circuit, or the chief judge's designee, ~~shall~~ appoints ~~and convene~~ the ~~initial~~ circuit pro bono committee members, and the committee will appoint its chair.

(1) *Composition of Circuit Court Pro Bono Committee.* Each circuit pro bono committee is composed of:

(A) the chief judge of the circuit or the chief judge's designee;

(B) to the extent feasible, 1 or more representatives from each voluntary bar association, including each federal bar association, recognized by The Florida Bar and 1 representative from each pro bono and legal assistance provider in the circuit, which representatives are nominated by the association or provider; and

(C) at least 1 public member and at least 1 client-eligible member, which members are nominated by the other members of the circuit pro bono committee.

Governance and terms of service are determined by each Each circuit pro bono committee determines its own governance and terms of service. Replacement and succession members are appointed by the chief judge of the circuit or the chief judge's designee, upon nomination by the association, the provider organization or the circuit pro bono committee, as the case may be, as deemed appropriate or necessary to ensure an active circuit pro bono committee in each circuit.

(2) *Responsibilities of Circuit Pro Bono Committee*. The circuit pro bono committee will:

(A) prepare in written form a circuit pro bono plan after evaluating the needs of the circuit and making a determination of present available pro bono services;

(B) implement the plan and monitor its results;

(C) submit an annual report to The Florida Bar standing committee;

(D) use current legal assistance and pro bono programs in each circuit, to the extent possible, to implement and operate circuit pro bono plans and provide the necessary coordination and administrative support for the circuit pro bono committee;

(E) encourage more lawyers to participate in pro bono activities by preparing a plan that provides for various support and educational services

for participating pro bono attorneys, which, to the extent possible, should include:

(i) intake, screening, and referral of prospective clients;

(ii) matching cases with individual ~~attorney~~lawyer expertise, including the establishment of ~~specialized~~practice area panels;

(iii) resources for litigation and out-of-pocket expenses for pro bono cases;

(iv) legal education and training for pro bono attorneys in ~~specialized~~particular areas of law useful in providing pro bono legal service;

(v) consultation with ~~attorneys~~lawyers who have expertise in areas of law with respect to which a volunteer lawyer is providing pro bono legal service;

(vi) malpractice insurance for volunteer pro bono lawyers with respect to their pro bono legal service;

(vii) procedures to ensure adequate monitoring and follow-up for assigned cases and to measure client satisfaction; and

(viii) recognition of pro bono legal service by lawyers.

**(d) Pro Bono Service Opportunities.** The following are suggested pro bono service opportunities that should be included in each circuit plan:

(1) represent clients through case referral;

(2) interview prospective clients;

(3) participate in pro se clinics and other clinics in which lawyers provide advice and counsel;

(4) act as co-counsel on cases or matters with legal assistance providers and other pro bono lawyers;

(5) provide consultation services to legal assistance providers for case reviews and evaluations;

(6) participate in policy advocacy;

(7)  provide training to the staff of legal assistance providers and other volunteer pro bono attorneys;

(8)  make presentations to groups of poor persons regarding their rights and obligations under the law;

(9)  provide legal research;

(10)  provide guardian ad litem services;

(11)  provide assistance in the formation and operation of legal entities for groups of poor persons; and

(12)  serve as a mediator or arbitrator at no fee to the client-eligible party.

## 4-8 MAINTAINING THE INTEGRITY OF THE PROFESSION
## RULE 4-8.3  REPORTING PROFESSIONAL MISCONDUCT

**(a)  Reporting Misconduct of Other Lawyers.**  A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects ~~shall~~must inform the appropriate professional authority.

**(b)  Reporting Misconduct of Judges.**  A lawyer who knows that a judge has committed a violation of applicable rules of judicial conduct that raises a substantial question as to the judge's fitness for office ~~shall~~must inform the appropriate authority.

**(c)  Confidences Preserved.**  This rule does not require disclosure of information;

(1) otherwise protected by rule 4-1.6;

(2) gained by a lawyer while serving as a mediator or mediation participant if the information is privileged or confidential under applicable law; or

(3) gained by a lawyer or judge while participating in an approved lawyers assistance program unless the lawyer's participation in an approved lawyers assistance program is part of a disciplinary sanction, in which case a report about the lawyer who is participating as part of a disciplinary sanction ~~shall~~must be made to the appropriate disciplinary agency.

**(d)  Limited Exception for ~~Practice Resource Institute Counsel~~Florida Bar Established Law Practice Management Program.**  A lawyer employed by or acting on behalf of the ~~Practice Resource Institute~~ law practice management advice and education program established and supervised by the board of governors is exempt from the obligation to disclose knowledge of the conduct of another member of The Florida Bar that raises a substantial question as to the other lawyer's fitness to practice if the lawyer employed by or acting on behalf of the ~~Practice Resource Institute~~program acquired the knowledge while engaged in the course of the lawyer's regular job duties as a~~n Practice Resource Institute~~ employee of the program.

## Comment

Self-regulation of the legal profession requires that members of the profession initiate disciplinary investigation when they know of a violation of the Rules of Professional Conduct.  Lawyers have a similar obligation with respect to judicial misconduct.  An apparently isolated violation may indicate a pattern of misconduct that only a disciplinary investigation can uncover.  Reporting a violation is especially important where the victim is unlikely to discover the offense.

A report about misconduct is not required where it would involve violation of rule 4-1.6.  However, a lawyer should encourage a client to consent to disclosure where prosecution would not substantially prejudice the client's interests.

If a lawyer were obliged to report every violation of the rules, the failure to report any violation would itself be a professional offense.  Such a requirement existed in many jurisdictions, but proved to be unenforceable.  This rule limits the reporting obligation to those offenses that a self-regulating profession must vigorously endeavor to prevent.  A measure of judgment is, therefore, required in complying with the provisions of this rule.  The term "substantial" refers to the seriousness of the possible offense and not the quantum of evidence of which the lawyer is aware.

The duty to report professional misconduct does not apply to a lawyer retained to represent a lawyer whose professional conduct is in question.  Such a situation is governed by the rules applicable to the client-lawyer relationship.

Generally, Florida statutes provide that information gained through a "mediation communication" is privileged and confidential, including information which discloses professional misconduct occurring outside the mediation.

However, professional misconduct occurring during the mediation is not privileged or confidential under Florida statutes.

Information about a lawyer's or judge's misconduct or fitness may be received by a lawyer in the course of that lawyer's participation in an approved lawyers or judges assistance program. In that circumstance, providing for an exception to the reporting requirements of subdivisions (a) and (b) of this rule encourages lawyers and judges to seek treatment through such a program. Conversely, without such an exception, lawyers and judges may hesitate to seek assistance from these programs, which may then result in additional harm to their professional careers and additional injury to the welfare of clients and the public. These rules do not otherwise address the confidentiality of information received by a lawyer or judge participating in an approved lawyers assistance program; such an obligation, however, may be imposed by the rules of the program or other law.

## CHAPTER 6 LEGAL SPECIALIZATION AND EDUCATION PROGRAMS
## 6-1 GENERALLY
## RULE 6-1.2 PUBLIC NOTICE

The Florida Bar may ~~cause~~<u>publish</u> a public notice ~~to be promulgated where and when it deems necessary, including, for example, telephone directory yellow page~~<u>in any media</u>, in substantially the following form:

### NOTICE

### FOR THE GENERAL INFORMATION OF THE PUBLIC

~~ATTORNEYS~~<u>LAWYERS</u> INDICATING "BOARD CERTIFIED," "<u>BOARD CERTIFIED </u>SPECIALIST," OR "<u>BOARD CERTIFIED </u>EXPERT" HAVE BEEN CERTIFIED BY THE FLORIDA BAR AS HAVING SPECIAL KNOWLEDGE, SKILLS, AND PROFICIENCY IN THEIR AREAS OF PRACTICE AND HAVE BEEN EVALUATED BY THE BAR AS TO THEIR CHARACTER, ETHICS, AND REPUTATION FOR PROFESSIONALISM IN THE PRACTICE OF LAW.

ALL PERSONS ARE URGED TO MAKE THEIR OWN INDEPENDENT INVESTIGATION AND EVALUATION OF ANY ~~ATTORNEY~~<u>LAWYER</u> BEING CONSIDERED.

This notice published by The Florida Bar Board of Legal Specialization and Education, Telephone 850/561-5600, 651 E. Jefferson Street, Tallahassee, Florida 32399-2300.

## 6-10 CONTINUING LEGAL EDUCATION REQUIREMENT RULE
## RULE 6-10.3 MINIMUM CONTINUING LEGAL EDUCATION STANDARDS

**(a) Applicability.** Every member, except those exempt under subdivision (c) of this rule, must comply and report compliance with the continuing legal education requirement. Members must apply for and receive approval by the bar of an exemption from compliance and reporting of continuing legal education under subdivisions (c)(1) through (c)(3) of this rule. Members described in subdivisions (c)(4) through (c)(6) of this rule are automatically exempt from compliance and reporting of continuing legal education.

**(b) Minimum Hourly Continuing Legal Education Requirements.** Each member must complete a minimum of 33 credit hours of approved continuing legal education activity every 3 years. FiveAt least 5 of the 33 credit hours must be in approved legal ethics, professionalism, bias elimination, substance abuse, or mental illness awareness programs, with at least 1 of the 5 hours in an approved professionalism program, and at least 3 of the 33 credit hours must be in approved technology programs, are included in, not in addition to, the regular 33 credit hour requirement. If a member completes more than 33 credit hours during any reporting cycle, the excess credits cannot be carried over to the next reporting cycle.

**(c) Exemptions.** Eligibility for an exemption, in accordance with policies adopted under this rule, is available for:

(1) active military service;

(2) undue hardship;

(3) nonresident members not delivering legal services or advice on matters or issues governed by Florida law;

(4) members of the full-time federal judiciary who are prohibited from engaging in the private practice of law;

(5) justices of the Supreme Court of Florida and judges of the district courts of appeal, circuit courts, and county courts, and other judicial officers and employees as designated by the Supreme Court of Florida; and,

(6) inactive members of The Florida Bar.

**(d)  Course Approval.**  Course approval is set forth in policies adopted pursuant to this rule.  Special policies will be adopted for courses sponsored by governmental agencies for employee ~~attorneys~~lawyers that exempt these courses from any course approval fee and may exempt these courses from other requirements as determined by the board of legal specialization and education.

**(e)  Accreditation of Hours.**  Accreditation standards are set forth in the policies adopted under this rule.  Any course presented, sponsored, or approved for credit by an organized integrated or voluntary state bar is deemed an approved course for purposes of this rule if the course meets the criteria for accreditation established by policies adopted under this rule.

**(f)  Full-time Government Employees.**  Credit hours will be given to full-time government employees for courses presented by governmental agencies.  Application for credit approval may be submitted by the full-time government ~~attorney~~lawyer before or after attendance, without charge.

**(g)  Skills Training Preadmission.**  The board of legal specialization and education may approve for CLER credit a basic skills or entry level training program developed and presented by a governmental entity.  Credit earned through attendance at an approved course developed and presented by a governmental entity is applicable under subdivision (b) of this rule if taken within 12 months prior to admission to The Florida Bar.

## CHAPTER 14 GRIEVANCE MEDIATION AND FEE ARBITRATION
## 14-6 NATURE; ENFORCEMENT OF AWARD; EFFECT OF FAILURE TO PAY
## RULE 14-6.1  BINDING NATURE; ENFORCEMENT; AND EFFECT OF FAILURE TO PAY AWARD

**(a)  Binding Determination.**  The parties to a proceeding under these rules ~~shall be~~are bound by the terms of the arbitration award subject to those rights and procedures to set aside or modify the award provided by chapter 682, Florida Statutes, or by the terms of an agreement reached in mediation.

**(b)  Enforcement of Determination.**  In addition to any remedy authorized in this chapter, an arbitration award may be enforced as provided in chapter 682, Florida Statutes.

**(c)  Effect of Failure to Pay Award.**  Failure of a member of the bar to pay an award within 30 days of the date on which the award became final, without just cause for ~~such~~that failure, ~~shall~~will ~~result in~~cause the member ~~being~~to be

delinquent and ~~not authorized~~ineligible to practice law, as provided elsewhere in these rules defining delinquent members.

**Comment**

Lack of funding, alone, does not constitute just cause under this rule.

## 14-7 IMMUNITY AND CONFIDENTIALITY
## RULE 14-7.1  IMMUNITY AND CONFIDENTIALITY

**(a)  Immunity.**  The members of the standing committee, mediators, arbitrators, staff of The Florida Bar, and appointed voluntary counsel assisting the committee, mediators, and arbitrators, ~~shall~~ have absolute immunity from civil liability for all acts in the course of their official duties.

**(b)  Confidentiality of Arbitration Proceedings and Records.**  All records, documents, files, proceedings, and hearings pertaining to fee arbitration under these rules ~~shall be~~are ~~made available, upon inquiry, to anyone~~public records and will be provided on request, except for~~.  Provided, however, that~~ any record of an arbitrator's mental processes ~~shall not be subject to discovery and a panel of arbitrators may retire into~~and any record of an arbitration panel's executive session to consider the issues raised and to reach a decision as to an award.

**(c)  Confidentiality of Mediation Proceedings and Records.**  All records, documents, files, and proceedings pertaining to mediation under this chapter ~~shall be~~are made available only as provided in the Florida Rules for Certified and Court-Appointed Mediators and applicable law.

## CHAPTER 18 MILITARY LEGAL ASSISTANCE COUNSEL RULE
## 18-1 GENERALLY
## RULE 18-1.2  DEFINITIONS

**(a)  Authorized Legal Assistance Lawyer.**  An "authorized legal assistance lawyer" is any person who:

(1)  is admitted to practice law by the highest court of another state, the District of Columbia, or a territory of the United States;

(2)  is serving on active duty within the Department of Defense (including the National Guard while in federal service) or the Department of Transportation (with respect to the United States Coast Guard);

(3) is assigned to an installation, unit, ~~and/~~or activity located within the geographic limitations of the courts of the state of Florida; ~~and~~

(4) completes The Florida Bar Young Lawyers Division Practicing with Professionalism program (Basic Skills Course Requirement) within the time required by rule 6-1.3; and

(5) appears in connection with official duties as a legal assistance lawyer.

**(b) Approved Legal Assistance Office.** An "approved legal assistance office" for the purposes of this chapter is a military command tasked with providing legal assistance as approved by the Department of Defense or Department of Transportation.

**(c) Supervising Lawyer.** A "supervising lawyer" is a member in good standing of The Florida Bar <u>who is eligible to practice law in Florida and </u>who supervises an authorized legal assistance lawyer engaged in activities permitted by this chapter. The supervising lawyer must:

(1) be employed by or be a participating volunteer for an approved legal assistance office (to specifically include military reserve lawyers); and

(2) assume personal professional responsibility for supervising the conduct of the matter, litigation, or administrative proceeding in which the authorized legal assistance lawyer participates.

**(d) Authorized Legal Assistance Client**. An "authorized legal assistance client" is:

(1) an active duty military member who is assigned to an installation, unit, ~~and/~~or activity located within the state of Florida and who otherwise meets current income eligibility guidelines of the Legal Services Corporation;

(2) a military retiree who resides within the state of Florida and who otherwise meets current income eligibility guidelines of the Legal Services Corporation;

(3) the dependents of any active duty military member or retiree who are otherwise residents of the state of Florida and meet current income eligibility guidelines of the Legal Services Corporation; or

(4)  the surviving family members who are Florida residents of an active duty military member who died while in active military service for purposes of settling the deceased military member's affairs.

## CHAPTER 20 FLORIDA REGISTERED PARALEGAL PROGRAM
## 20-3 ELIGIBILITY REQUIREMENTS
## RULE 20-3.1 REQUIREMENTS FOR REGISTRATION

In order to be a Florida Registered Paralegal under this chapter, an individual must meet 1 of the following requirements.

**(a)  Educational and Work Experience Requirements.** A person may become a Florida Registered Paralegal by meeting 1 of the following education and paralegal work experience requirements:

(1)  a bachelor's degree in paralegal studies from an approved paralegal program, plus a minimum of 1 year of paralegal work experience;

(2)  a bachelor's degree or higher degree other than a juris doctorate from an institution accredited by a nationally recognized accrediting agency approved by the United States Department of Education or the Florida Department of Education, plus a minimum of 3 years of paralegal work experience;

(3)  an associate's degree in paralegal studies from an approved paralegal program, plus a minimum of 2 years of paralegal work experience;

(4)  an associate's degree from an institution accredited by a nationally recognized accrediting agency approved by the United States Department of Education or the Florida Department of Education, plus a minimum of 4 years of paralegal work experience; or

(5)  a juris doctorate degree from an American Bar Association accredited institution, plus a minimum of 1 year of paralegal work experience; or

(6)  a juris doctorate degree from an American Bar Association accredited institution and membership in good standing with a state bar association other than Florida's, with no minimum paralegal work experience.

**(b)  Certification.** A person may become a Florida Registered Paralegal by obtaining 1 of the following certifications:

(1)  successful completion of the Paralegal Advanced Competency Exam (PACE certification as offered by the National Federation of Paralegal Associations "NFPA") and good standing with NFPA; or

(2)  successful completion of the Certified Legal Assistant/Certified Paralegal examination (CLA/CP certification as offered by the National Association of Legal Assistants "NALA") and good standing with NALA.

**(c)  Grandfathering Reapplication.** A paralegal who was registered under the grandfathering provision on or prior to March 1, 2011, who resigns or whose registration is revoked may reapply based on work experience alone. The paralegal must provide work experience as defined elsewhere in these rules for 5 of the 8 years immediately preceding the date of reapplication.

## 20-5 INELIGIBILITY FOR REGISTRATION OR RENEWAL
### RULE 20-5.2  DUTY TO UPDATE

An individual applying for registration as a Florida Registered Paralegal or who is registered as a Florida Registered Paralegal has a duty to inform The Florida Bar promptly of any fact or circumstance that would render the individual ineligible for registration or renewal, and The Florida Bar will notify the employing or supervising lawyer as defined elsewhere in this chapter of any changes to the registration status.

## 20-6 CONTINUING EDUCATION
### RULE 20-6.1  GENERALLY

In order to maintain the status of Florida Registered Paralegal, a Florida Registered ParalegalParalegals must complete a minimum of 3033 hours of continuing education every 3 years, 5 hours of which must be in legal ethics or professionalism and 3 hours of which must be in technology. CoursesAcceptable courses include those approved for credit by The Florida Bar, the National Association of Legal Assistants (NALA), or the National Federation of Paralegal Associations (NFPA) will be deemed acceptable for purposes of this rule.  To be eligible for re-registration, if a Florida Registered Paralegal resigns or has had his or her status revoked but is otherwise eligible for re-registration, the Florida Registered Paralegal must complete at least 10 hours of continuing education for each year the Florida Registered Paralegal was previously registered.A Florida Registered Paralegal who resigns or whose status has been revoked but is otherwise eligible for re-registration must complete at least 11 hours of continuing education for each year the Florida Registered Paralegal was previously registered

in order to be eligible for re-registration. ~~The continuing education hours must be completed prior to the re-registration application and be posted on The Florida Bar website within 30 days of the effective date of re-registration, otherwise the new registration will be revoked and ineffective.~~The new registration will be revoked unless the continuing education hours are completed before the re-registration application and posted on The Florida Bar website within 30 days of the effective date of the re-registration.  ~~Upon re-registration, the~~The Florida Registered Paralegal will be given a new 3-year continuing education cycle on re-registration.

## Comment

Continuing education is an important component of the Florida Registered Paralegal program and necessary to maintain the status of a Florida Registered Paralegal.  If a Florida Registered Paralegal resigns or has had ~~his or her~~the paralegal's status revoked at the end of a continuing education cycle without completing the necessary hours, the paralegal must show that ~~he or she~~the paralegal has completed a minimum of ~~10~~11 hours of continuing education for each year of the immediately preceding term that the paralegal was registered.  For example, if the paralegal was registered for 2 years, the paralegal must complete at least ~~20~~22 hours of continuing education in order to re-register.  The courses must be completed prior to the date the paralegal reapplies for Florida Registered Paralegal status.  As an example, assume that a Florida Registered Paralegal was given a continuing education cycle that ran from January 1, 2011, to January 1, 2014, and the Florida Registered Paralegal resigned or had ~~his or her~~the paralegal's status revoked in October 2013.  If the paralegal reapplies for Florida Registered Paralegal status in February 2014, the paralegal must show ~~20~~22 hours of continuing education credit completed between January 1, 2011, to January 1, 2014, to be eligible to re-register.  Because a Florida Registered Paralegal must enter all course credits on The Florida Bar's website and access to the portion of the website where credits are posted is not available during the period the paralegal was not registered, the Florida Registered Paralegal will have 30 days after re-registration to enter the credits.  Failure to timely enter the credits will result in the Florida Registered Paralegal's status being revoked.  ~~Upon re-registration, the~~The Florida Registered Paralegal will be given a new continuing education cycle on re-registration.  The purpose of this rule is to ensure that ~~a~~Florida Registered Paralegals continue~~s~~ ~~his or her~~their education.  This is meant to avoid a situation where a Florida Registered Paralegal has not completed the continuing education requirement, resigns, and then re-registers with a new 3-year cycle, having failed to complete the requisite hours when previously registered.

If a Florida Registered Paralegal resigns or has ~~his or her~~the paralegal's status revoked during ~~his or her~~ the continuing education cycle, the cycle will not reset. For example, assume a Florida Registered Paralegal has a continuing education cycle beginning January 1, 2011, and ending January 1, 2014. The Florida Registered Paralegal's status is revoked in October 2012, for failure to pay the annual renewal. If the paralegal reapplies and is re-registered in December 2012, the continuing education cycle will remain the same, and the Florida Registered Paralegal will have until January 1, 2014, to complete the necessary hours.

## 20-8 REVOCATION OF REGISTRATION
## RULE 20-8.3  COMPLAINT PROCESSING

**(a)  Complaints.**  All complaints against a Florida Registered Paralegal may be initiated either by a sworn complaint asserting a violation of these rules or by The Florida Bar on its own motion.

**(b)  Review by Bar Counsel.**  Bar counsel ~~shall~~must review the complaint and determine whether the alleged conduct, if proven, would constitute a violation of these rules. Bar counsel may conduct a preliminary, informal investigation to aid in this determination and, if necessary, may employ a Florida Bar staff investigator to aid in the preliminary investigation. If bar counsel determines that the facts, if proven, would not constitute a violation, bar counsel may decline to pursue the complaint. The complainant ~~shall~~must be notified of a decision not to pursue a complaint ~~and shall be given the reasons therefor~~including the reasons for not pursuing the complaint.

**(c)  Closing by Bar Counsel and Committee Chair.**  Bar counsel may consult with the appropriate district paralegal committee chair to determine whether the alleged conduct of a complaint, if proven, would constitute a violation of these rules. If bar counsel and the district committee chair concur in a finding that the case should be closed, the complaint may be closed ~~on such finding~~ without referral to the district paralegal committee.

**(d)  Referral to District Paralegal Committee.**  Bar counsel may refer a file to the appropriate district paralegal committee for further investigation or action as authorized elsewhere in these rules.

**(e)  Notification of Violation.**  If a majority of the district paralegal committee finds probable cause to believe that a violation of these rules has occurred, bar counsel or the chair of the district paralegal committee will send written notice ~~thereof~~ to the Florida Registered Paralegal identifying the committee finding and

the alleged violation and the Florida Registered Paralegal must notify their supervising lawyer of the complaint. The notice ~~shall~~will be sent by certified U.S. mail directed to the last mailing address on file.

**(f)  Response to Notice of Violation.**  ~~Within 30 days from the receipt of the notification, the~~The Florida Registered Paralegal ~~shall~~must file a written response within 30 days of receipt of the notification. If the Florida Registered Paralegal does not respond, the violations identified in the finding of probable cause ~~shall be~~are deemed admitted.

**(g)  Committee Review.**  ~~After the filing of the written response to the finding of probable cause or following the expiration of the time within which to file a response if none is filed, the~~The district paralegal committee ~~shall~~must review the complaint, the finding of probable cause, ~~the response (if any)~~any response filed, and any other pertinent materials~~,~~ after either the filing of a written response by the Florida Registered Paralegal or the expiration of the time to file a response. The Committee must ~~and~~ decide whether to dismiss the proceeding or issue a proposed disposition. The committee ~~shall~~must promptly send written notice of its decision to the Florida Registered Paralegal by certified U.S. mail directed to the last mailing address on file.

### RULE 20-8.6  DISPOSITION OF COMPLAINTS

~~Upon~~On concluding its investigation, the district paralegal committee ~~shall~~will determine which of the following action(s) should be taken:

**(a)**  close the matter on a finding of no violation;

**(b)**  close the matter with a letter of advice;

**(c)**  require ~~that~~completion of a specified continuing education course ~~be taken~~;

**(e~~d~~)**  accept an affidavit from the Florida Registered Paralegal acknowledging that the conduct surrounding the complaint was a violation of these rules and that the Florida Registered Paralegal will refrain from conduct that would create a violation of these rules;

**(d~~e~~)**  ~~suspension of~~suspend the Florida Registered Paralegal's registration certificate for a period not to exceed 1 year;

**(e~~f~~)**  ~~revocation of~~revoke the Florida Registered Paralegal's registration certificate; or

**(fg)** ~~denial of~~<u>deny</u> the Florida Registered Paralegal's request for renewal.